464 A.2d 428

In re Gertrude ANDERSON, Vernon Slater Anderson, Jr., and Dolly Melina Anderson.

**Appeal of Dolly Parkinson ANDERSON.**

In re Gertrude ANDERSON, Vernon Slater Anderson, Jr., and Dolly Melina Anderson.

**Appeal of Vernon Slater ANDERSON, Sr.**

Superior Court of Pennsylvania.

Argued Feb. 24, 1983.

Filed Aug. 5, 1983.

Robert D. Berryman, Waynesburg, for Dolly Parkinson Anderson, appellant (at No. 216) and participating party (at No. 217).

Mary Kardos Pruss, Waynesburg, for Vernon Slater Anderson, Sr., appellant (at No. 217) and participating party (at No. 216).

John W. Hardisty, Waynesburg, for appellees.

R. Wallace Maxwell, for Children and Youth, participating party.

Before SPAETH, BROSKY and MONTEMURO, JJ.

BROSKY, Judge:

This appeal is from an order terminating parental rights. The father and mother each argue in separate appeals that the requisite showing was not made. We disagree and accordingly affirm.

## Procedural History

In February of 1975, the two older children of the family were placed in foster care with Children and Youth Services of Greene County, Pennsylvania. They were returned to their parents in May and June of 1976. In October of 1979, all three children were placed in foster care and remain there until the present.

In July, 1980, a Petition for Involuntary Termination of Parental Rights was filed by Children and Youth Services requesting that the rights of the parents be terminated under the Adoption Act of 1970 in effect at that time.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions

and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent; or ... 1 P.S. § 311.

Hearings were held on this petition and on October 21, 1980 the Court granted the petition, terminating the parental rights of the parents. Exceptions were filed and dismissed in February of 1982. This appeal followed.

## Evidentiary Burden

■ In March of 1982, the United States Supreme Court issued a landmark decision in the termination of parental rights area. *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). It declared, as a matter of federal constitutional law, that in cases of this type the state must establish the relevant conditions by "clear and convincing" evidence. *Id.* at 768, 102 S.Ct. at 1402, 71 L.Ed.2d at 616.

In *In re Adoption of M.E.T.*, 313 Pa.Super. 316, 459 A.2d 1247 (1983), this Court held that the *Santosky* standard applied to cases which were on appeal when *Santosky* came down; and that those cases should be remanded for a hearing utilizing the new standard. The case before us was decided before *Santosky* appeared and was on appeal when that decision was made public. Thus, it could come within the *M.E.T.* remand requirement.

However, while *Santosky* and *M.E.T.* do apply to the case before us, remand is not required here. This is because the court below used an evidentiary standard at least equal to the one mandated by *Santosky.* As indicated by its opinion, the evidentiary standard used by that court was "clear, competent and compelling." [1] As a matter of legal construction, looking to the plain meaning of the words, "compelling" evidence is at least as stringent a requirement as "convincing" evidence. *Santosky's* requirement was met here and we can go on to consider the case on its merits.

1. The court below derived this standard from the opinion of Justice Roberts in *In re Adoption of R.I.,* 468 Pa. 287, 361 A.2d 294 (1976).

494

*Scope of Review*

■ It is our understanding of the current state of the law that the appellate court has two functions in a case of this type. First, we must determine whether the court below committed an abuse of discretion in its findings of fact. Second, we must evaluate, using a broad scope of review, the inferences and legal conclusions drawn from those facts. *In re Adoption of J.A.B.*, 487 Pa. 79, 408 A.2d 1363 (1979); *Robert H.H. v. May L.H.*, 293 Pa.Super. 431, 439 A.2d 187 (1982) (Brosky, J.); *Commonwealth ex rel. Berman v. Berman*, 289 Pa.Super. 91, 432 A.2d 1066 (1981).

This Court has recently heard *en banc* the case of *In re Adoption of James J.*, Nos. 2776 and 2793 Philadelphia, 1981, in order to clarify this issue. It is not necessary for us to postpone our examination of this case pending the filing of an opinion in *James J.*[2] Using the broad scope of review as to inferences and legal conclusions, we affirm the decision of the court below. Consequently, even if the proper scope of review is found to be a narrower one, we would also have affirmed using it. Appellants will not be heard to complain about receiving the benefit of the broad scope of review of the order below adverse to them. Appellee also cannot protest, since the decision is in its favor.

*Intelligence Quotient*

We note that the record in this case includes the intelligence quotient (I.Q.) of each of the natural parents. The proper approach is to be taken with regard to this data is given in a 1955 opinion of this Commonwealth's Supreme Court.

It is a serious matter for the long arm of the state to reach into a home and snatch a child from its mother. It is a power which a government dedicated to freedom for the individual should exercise with extreme care, and only where the evidence clearly establishes its necessity...

---

2. It is, of course, desirable, if at all possible, to give cases of this type expeditious treatment on appeal.

A child cannot be declared "neglected" merely because his condition might be improved by changing his parents. The welfare of many children might be served by taking them from their homes and placing them in what the officials consider a better home. But the Juvenile Court Law was not intended to provide a procedure to take the children of the poor and give them to the rich, nor to take the children of the illiterate and give them to the educated, nor to take the children of the crude and give them to the cultured, nor to take the children of the weak and sickly and give them to the strong and healthy.

*Rinker Appeal*, 180 Pa.Super. 143 at 148, 117 A.2d 780 at 783 (1955).

■ The score of parents on an intelligence test is not a relevant factor in the decision-making process involved in a termination of parental rights case. It is the demonstrated willingness and ability of the parents to perform, at a minimal level, their parental duties that is dispositive. Nothing else is pertinent to the court's enquiry.

Of course, it is possible that a parent of limited intelligence may, as a consequence, encounter difficulties in fulfilling his role as a parent. However, it is to be strongly emphasized that a parent must not be doubly handicapped for his intellectual handicap through court recognition of it. We repeat that any detriment he may have in this area is simply not pertinent. If, on the other hand, that detriment is reflected in an incapacity to properly protect his child's physical and emotional welfare—it is that *behavior* which must be looked to. Equality under the law demands no less.

■ It is a basic premise of the law of parental termination that the best interests of the child cannot be examined until after the court is satisfied that the parent cannot, and will not, be able to be a proper parent to his children. Perhaps a child might have greater advantages if he were raised in a home with foster or adopted parents of normal or high intelligence. But the state cannot intrude into the

sacred sphere of the family unit and sever parent/child ties on that basis.

There is no indication that the court below gave any impermissible weight to the I.Q. information. Not only was it not referred to in that court's opinion, but there was other, ample information on which he could base his decision. On the facts of this case it is regrettably clear that the natural parents have not and will not be able to provide a home and family environment of at least a consistently minimal level.

## Facts

▆▆ The record provides evidence that the children usually lived in substandard, unhealthy, dangerous and unsanitary conditions; that the children were on occasion physically abused by both parents; that the mother was emotionally unstable, violent and unable to cope with the stresses of everyday living; that the children were often left in the care of an alcoholic grandmother while she was in an intoxicated state; that the family moved 23 times over a five-year period, creating an unstable home environment for the family; that the mother had numerous extramarital affairs; that the father only intermittently lived with the family; that three adult male relatives of the mother lived at various times with the family, grew marijuana and threatened social workers with guns; and that the father was exceptionally passive and unable to deal with the responsibilities of being a father.[3] Finally, the family has been under the supervision of Children and Youth Services over a period of five years. While the parents have, from time to time, made partially successful efforts at improving the situation, these efforts have always been only temporary and preceded backsliding into the former unsatisfactory conditions. This pattern also applies to the parents' involvement in a plan designed to improve their situation

---

**3.** We do not place any particular emphasis on any one of the above listed conditions. It is their cumulative impact upon the children that concerns us.

sufficiently for the eventual return of the children from foster care.

We do not lightly conclude that the termination of parental rights is warranted here. The relationship between parents and their children is most intimate. It is a sacrosanct bond and can only be severed upon the most clear and convincing showing of necessity. That necessity is present here and it compels us to perform our duty. The state's interest in protecting the children in this family prevails here over the interests of the children and the parents in preserving their family ties.

### Conclusion

We find that the court below properly concluded that the termination of parental rights was necessary given the facts before it. Consequently, we affirm the order terminating the parental rights of both the father and the mother.