In the Interest of J.M., born 1–3–92; K.M., born 4–22–88; K.M., born 6–25–86; T.M., born 8–25–83; M.M., born 6–1–80; F.M., JR., born 8–19–81.

**Appeal of F.L.M. and F.M.**

Superior Court of Pennsylvania.

Argued Sept. 28, 1994.

Filed Jan. 17, 1995.

Duane Barnes, Warren, for appellants.

Karl Swanson, Warren, for appellees.

William R. Mervine, Warren, for participating party Warren County Children & Youth Services.

Before WIEAND, OLSZEWSKI and KELLY, JJ.

WIEAND, Judge:

This is an appeal by F.L.M. and F.M., father and mother, from an order which granted a petition by Children and Youth Services of Warren County and adjudicated six of their eight children dependent.[1]

Born to F.L.M. and F.M. were eight children as follows: Js., born February 4, 1977; Ts., born May 19, 1978; M., born June 1, 1980; Fjr., born August 19, 1981; Tl., born August 25, 1983; Km., born June 25, 1986; Kt., born April 22, 1988; and Jn., born January 3, 1992. On January 6, 1988, before the last two children had been born, Warren County Children and Youth Services (CYS) received information that Tl., then age 4, had been sexually abused by F.L.M. CYS personnel, accompanied by a police officer, went to the M. home, which reportedly was found to be filthy, unsuitable for children and without heat except for a stove in the kitchen. Tl., pointing to her vaginal area, told police that her father had given her a "bad touch." CYS took emergency custody of the six children, and a medical examination of Tl. disclosed lacerations consistent with digital penetration. On January 11, 1988, a hearing was held on the petition filed by CYS for custody of the children. During this hearing, F.L.M., who had been experiencing health problems, became ill and the hearing was continued. Meanwhile, custody of the children remained with CYS.

Kt. was born on April 22, 1988, and within days was placed in the custody of CYS. On May 17, 1988, an agreement was reached by which F.L.M. was to attend sexual offender counseling and F.M. was to attend parenting classes. The parents were also to clean the home and remove animals that were present. Periodic review hearings were held thereafter, which resulted in the children's continued placement in foster care. The conditions at the home improved, however, and F.M. was allowed regular visitation with her children. Due to his continuing health problems, F.L.M.'s visits were less frequent.

F.L.M. cooperated with CYS by attending a counseling program, but he continued to deny that he had abused his daughter sexually. F.M. also denied that Tl. had been abused by F.L.M. Therefore, the counseling program was terminated. In September, 1988 and September, 1989, CYS unsuccessfully filed petitions to terminate F.L.M.'s parental rights. In August, 1991, however, a third petition was granted by the trial court, and F.L.M.'s parental rights were terminated. CYS also attempted to terminate F.M.'s parental rights. This petition was denied by the court, but only on the condition that she refuse to live with her husband.

On May 30, 1991, a disposition review hearing was held before a hearing officer, who made findings of fact and recommendations. Among these recommendations was that the four oldest children be allowed to return to their mother's home. By order of June 5, 1991, the trial court accepted this recommendation, and the four children were returned to their mother. On September 27, 1991, however, CYS again petitioned to obtain custody of the four children, alleging that they had been without proper parental

1. Although a review of the record discloses that CYS has played an adversarial role in these proceedings, it has not seen fit to file a brief in this Court.

control and that they had been allowed unsupervised visitation with their father. A hearing on the petition was held on October 17, 1991. Although the evidence was in sharp dispute, the testimony did reveal the following: F.M. had been babysitting the children of Don Fiscus, who came to the M. home after work to pick up his children. The children were often picked up by Randy Fiscus, Don's younger brother, who was eighteen at the time of the hearing. Randy Fiscus spent a significant amount of time with the four M. children, driving them around in his van and helping them with homework. A friend of Randy Fiscus, a twenty-one year old man named Ted Knisley, was also at the M. home with the children on occasion. Don and Randy Fiscus, as well as Knisley, lived on Front Street in Warren. The M. children often went to Front Street to play with Don Fiscus' children, Randy Fiscus, or other children in the area. According to CYS, at least two suspected sexual offenders lived on or near Front Street. CYS considered Randy Fiscus and Knisley to be "questionable", or "from a family of all sexual perpetrators." However, there was no evidence of any wrongdoing by these or other persons.

At the conclusion of the hearing, the trial court held that CYS had failed to prove by clear and convincing evidence that the children were dependent. The court, however, voiced serious concerns about the presence of older men in the M. home, as well as the children's safety while on Front Street in Warren. Therefore, the court entered an order which prohibited the children from going to the Front Street area and prohibited all males from entering the M. home without written permission from CYS.

On January 3, 1992, Jn. was born. She remained in the custody of her mother. Tl., Km. and Kt., however, remained in foster care. Periodic hearings continued to be held regarding issues of visitation and F.L.M.'s compliance with the family service plan.

In an opinion filed June 23, 1992, the Superior Court reversed the trial court's decree terminating F.L.M.'s parental rights. The Court found no evidence to support and, therefore, refused to be "bound by the [trial] court's inference or deduction that [F.L.M.] is an untreated sexual offender who poses a danger to his children." See: *In re M.*, 416 Pa.Super. 520, 542, 611 A.2d 737, 749 (1992). The Court held that CYS had failed to establish each of the statutory criteria for termination, and that the trial court had abused its discretion and misapplied the law. Even after this decision, however, CYS continued to insist that F.L.M. not be allowed unsupervised access to his children. As of the time of this appeal, he is still living separate and apart from his family.[2]

In October, 1992, Tl. was removed from foster care and placed back into the M. home. The following month, Km. returned home as well. In April, 1993, the last child remaining in foster care, Kt., was returned to F.M.

In May, 1993, Tl. informed one of her school teachers that she had been raped and had been fondled by several men. CYS was notified, and a preliminary investigation was conducted. On or about June 30, 1993, CYS caseworkers went to the M. home and, following interviews with the children, removed the six youngest children and took them into emergency custody. CYS then filed a petition for temporary custody. A hearing on the petition for temporary custody was held on September 2, 1993, and Tl., who was ten years old, told the trial court that Randy Fiscus had raped her on two occasions. According to her testimony, she had accompanied Fiscus in his van to pick up several of her sisters, when he parked the van at an area called the Hatch Patch, and he and Tl. had gone into the back of the van. Tl. said that Fiscus had also raped her some time after that, but she was unable or unwilling to recount the time or circumstances of the incident. Tl. also told the court that three men who were routinely in the M. home had fondled her. She reportedly had informed her mother of these incidents, but her mother had not believed her. Tl. claimed that another man had been staying overnight in the attic of the home. A medical examination of Tl. reported findings consistent with

2. No criminal charges have ever been filed against F.L.M.

sexual abuse. The proceedings were not then completed but were continued for an independent psychological evaluation of Tl.

A second hearing on the dependency petition was held on December 8, 1993. In the interim, custody of the six children had remained with CYS. At this hearing, further testimony was received regarding the presence of unrelated men at the M. home. Tl.'s older sister, M., who was thirteen at the time, denied that men were frequenting the home. M. also stated that Tl. had told her that she had never been sexually abused.

On January 26, 1994, the trial court adjudicated the six younger M. children dependent. An amended order was filed two days later which placed custody of these children with CYS. The parents appealed.

"Dependency proceedings concern themselves with the correction of situations in which children are lacking proper parental care or control." *In Interest of Garthwaite,* 422 Pa.Super. 280, 283, 619 A.2d 356, 358 (1993). A dependent child is one who "is without proper parental care or control...." 42 Pa.C.S. § 6302. "Whether a child is lacking proper parental care and control encompasses two discrete questions: (1) Is the child at this moment without proper parental care or control? and (2) If so, is such care and control immediately available?" *In re Jeffrey S.,* 427 Pa.Super. 79, 80–81, 628 A.2d 439, 440 (1993). See also: *In re J.C.,* 412 Pa.Super. 369, 373, 603 A.2d 627, 628 (1992); *In re Justin S.,* 375 Pa.Super. 88, 99, 543 A.2d 1192, 1197 (1988); *In Interest of Anita H.,* 351 Pa.Super. 342, 344–345, 505 A.2d 1014, 1015 (1986).

"Even if a child is adjudicated dependent under the Juvenile Act, he [or she] cannot be separated from his [or her] parents absent a showing that the separation is clearly necessary." *In Interest of Feidler,* 392 Pa.Super. 524, 527, 573 A.2d 587, 588 (1990), citing *In Interest of S.A.D.,* 382 Pa.Super. 166, 555 A.2d 123 (1989). "Such necessity is implicated where the welfare of the child demands that he [or she] be taken from his [or her] parents' custody." *In re S.M.,* 418 Pa.Super. 359, 365, 614 A.2d 312, 314 (1992). See also: *In re Miller,* 380 Pa.Super. 423, 552 A.2d 261 (1988). "[A] decision to remove a child from

his or her parents' custody must be reconciled with the 'paramount purpose' of preserving family unity." *In re S.M., supra* at 365, 614 A.2d at 314–415, quoting *In re Frank W.D.,* 315 Pa.Super. 510, 462 A.2d 708 (1983).

"The burden of proof in a dependency proceeding is on the petitioner ... who must show [that] the juvenile is without proper parental care, and that such care is not immediately available." *Matter of B.R.,* 408 Pa.Super. 345, 351, 596 A.2d 1120, 1123 (1991). See also: *In re Swope,* 391 Pa.Super. 484, 487, 571 A.2d 470, 472 (1990). A finding of dependency must be supported by clear and convincing evidence that proper parental care and control are not available. *In re S.M., supra* at 362, 614 A.2d at 313; *Matter of B.R., supra* at 351, 596 A.2d at 1123; *In Interest of Palmer,* 404 Pa.Super. 314, 318, 590 A.2d 798, 800 (1991); *In re Miller, supra* at 428, 552 A.2d at 264; *In Interest of Leslie H.,* 329 Pa.Super. 453, 456, 478 A.2d 876, 878 (1984). "The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *Matter of Sylvester,* 521 Pa. 300, 304, 555 A.2d 1202, 1203–1204 (1989). See also: *In Interest of Palmer, supra* at 318, 590 A.2d at 800; *In the Matter of Jackson,* 302 Pa.Super. 369, 374, 448 A.2d 1087, 1089 (1982); *In re Jackson,* 267 Pa.Super. 428, 431, 406 A.2d 1116, 1118 (1979). "Without such evidence, a child cannot be adjudged dependent and must be returned promptly to his or her parent." *In re Jeffrey S., supra* at 81, 628 A.2d at 440. See also: *In re Justin S., supra* at 99, 543 A.2d at 1197; *In re Haynes,* 326 Pa.Super. 311, 315, 473 A.2d 1365, 1367 (1984).

Our standard of review in dependency cases has been described as follows:

The standard of review which this Court employs in dependency cases is broad. However, the scope of our review is limited in a fundamental manner by our inability to nullify the fact-finding of the lower court. We accord great weight to this function of the hearing judge because he is

in the position to observe and rule upon the credibility of the witnesses and the parties who appear before him. Relying on this unique posture, we will not overrule his findings if they are supported by competent evidence.

*In re M.K.*, 431 Pa.Super. 198, 203–204, 636 A.2d 198, 201 (1994), *allocatur denied,* 537 Pa. 633, 642 A.2d 486 (1994), quoting *In re Frank W.D., supra.* See also: *In Interest of C.L.*, 436 Pa.Super. 630, ——, 648 A.2d 799, 802 (1994); *In Interest of R.C.*, 427 Pa.Super. 196, 202, 628 A.2d 893, 897 (1993); *In re B.B.*, 424 Pa.Super. 399, 405, 622 A.2d 979, 982–983 (1993).

■ In general, a finding of abuse has been held sufficient under most circumstances to support an adjudication of dependency. *In re Jeffrey S., supra* at 83, 628 A.2d at 441; *In re Justin S., supra* at 103, 543 A.2d at 1199. However, a child should not be found dependent merely because a sibling is dependent. *In Interest of R.T.*, 405 Pa.Super. 156, 168, 592 A.2d 55, 61 (1991); *In Interest of Theresa E.*, 287 Pa.Super. 162, 173, 429 A.2d 1150, 1156 (1981).

■ This is a most difficult case. The trial court found that Tl. had been abused sexually and was "suspicious" that the other M. children had not been cared for properly and were in danger because of the presence of male persons who had access to the home of the children's mother.[3] CYS shared these suspicions and was responsible, in large measure, for imparting them to the court. The record is clear, however, that CYS has been unable to produce evidence of any specific neglect or abuse of the M. children other than the abuse of Tl., to which she alone testified.

The record suggests numerous reasons for questioning the credibility of Tl.'s accusations of sexual abuse. The trial court, however, rejected such credibility challenges and found that Tl. had testified truthfully. Because there is competent evidence to support this finding, we accept and are bound by it.

There is no competent evidence, however, to support the trial court's finding that any other children were dependent.[4] Even CYS did not contend that the two oldest children, Js. and Ts., were dependent; and, therefore, it did not include them in its petition. As to the remaining children, M., Fjr., Km., Kt. and Jn., there is nothing but innuendo and suspicion. There is no evidence that the children have been either neglected or abused. It may be, as CYS opines, that it can find better parents for the M. children than F.L.M. and F.M., but this alone does not support the court's finding of dependency. The petitioner was required to show by clear and convincing evidence that proper parental care and control were not available.

As was stated by the Superior Court in *Rinker Appeal,* 180 Pa.Super. 143, 117 A.2d 780 (1955):

It is a serious matter for the long arm of the state to reach into a home and snatch a child from its mother. It is a power which a government dedicated to freedom for the individual should exercise with extreme care, and only where the evidence clearly establishes its necessity. Yet, of course, there are cases where such authority must be exercised for the protection and welfare of children.

Under our system of government children are not the property of the state to be reared only where and under such conditions as officials deem best. On the other hand the state is interested in establishing a minimum standard of care for a child's physical, intellectual and moral well being. But this minimum standard must be viewed in the light of experience. Although there are many very good homes, there is no such thing as a "perfect home."

A child cannot be declared "neglected" merely because his condition might be improved by changing his parents. The welfare of many children might be served by taking them from their homes and placing them in what the officials may consider a better home. But the Juvenile Court Law

---

3. It is ironic that CYS continues to insist that the children's father not live with his children. His "sin", it appears, is his continuing refusal to "admit" that he abused his daughter, Tl.

4. It is significant that neither the trial court nor the author of the dissenting opinion has identified any evidence of specific neglect with respect to the remaining five children.

was not intended to provide a procedure to take the children of the poor and give them to the rich, nor to take the children of the illiterate and give them to the educated, nor to take the children of the crude and give them to the cultured, nor to take the children of the weak and sickly and give them to the strong and healthy.

*Id.* at 148, 117 A.2d at 783. See also: *In Interest of Coast*, 385 Pa.Super. 450, 464–465, 561 A.2d 762, 769 (1989) (en banc), *allocatur denied*, 525 Pa. 593, 575 A.2d 560 (1990); *In re Adoption of M.J.H.*, 348 Pa.Super. 65, 71, 501 A.2d 648, 651 (1985), *allocatur denied*, 514 Pa. 636, 522 A.2d 1105 (1987); *In re Anderson*, 317 Pa.Super. 490, 494–495, 464 A.2d 428, 430 (1983); *In re Custody of Frank*, 283 Pa.Super. 229, 247, 423 A.2d 1229, 1239 (1980); *In the Interest of LaRue*, 244 Pa.Super. 218, 227, 366 A.2d 1271, 1275–1276 (1976); *Matter of DeSavage*, 241 Pa.Super. 174, 184–185, 360 A.2d 237, 242 (1976).

Because the evidence failed to show that proper parental care and control were not available, we find it necessary to reverse the adjudication which found the five remaining children dependent.

■ Appellants contend also that the court erred when it allowed Tl. to testify in camera without the presence of her parents but in the presence of the director of the foster home in which the child was living. However, the "conduct of a trial is within the discretion of the trial judge, and his [or her] exercise of discretion will not be reversed in the absence of an abuse thereof." *Kearns v. Clark*, 343 Pa.Super. 30, 40, 493 A.2d 1358, 1363 (1985). Moreover, the provisions of the Juvenile Act make it clear that the court may admit to in camera proceedings "other persons accompanying a party or a victim for his or her assistance." 42 Pa.C.S. § 6336(d). Thus, a large discretion was vested in the trial court, *Commonwealth v. Dress*, 354 Pa. 411, 414, 47 A.2d 197, 199 (1946), and we are hard pressed to find any support for appellants' contention that the court abused its discretion in this case. The child was questioned by the court and by counsel for the several parties, and it does not appear that the director either participated in the questioning or influenced the witness's testimony.

Therefore, we find no error. See: *Commonwealth v. Pankraz*, 382 Pa.Super. 116, 554 A.2d 974 (1989), *allocatur denied*, 522 Pa. 618, 563 A.2d 887 (1989) (trial court did not abuse discretion by permitting child witness to sit on grandmother's lap while giving testimony).

The trial court's order adjudicating Tl. dependent is affirmed. That portion of the order which adjudicates the other children dependent, however, is reversed; and said children shall be returned to the custody of their parents.

OLSZEWSKI, J., files a Dissenting Opinion.

OLSZEWSKI, Judge, dissenting.

I respectfully dissent from that part of the decision which reverses the hearing court's order adjudicating J.M., born 1/03/92, K.M., born 4/22/88, K.M., born 6/25/86, M.M., born 6/01/80, and F.M., Jr., born 3/19/81, dependent. It was not an abuse of discretion to find appellant-mother to be a dysfunctional parent who did not promote the safety and welfare of her children. The children's placement outside the home is therefore necessary. Moreover, the reasons compelling placement of T.M. are equally applicable when adjudicating the dependency of the other five children. The fact that these five children did not share as harsh a fate as T.M. is fortuitous, and not a positive reflection of the parenting skills of appellant-mother.

The majority quotes *In re M.K.* for the proposition that our standard of review in dependency cases is broad. 431 Pa.Super. 198, 203–204, 636 A.2d 198, 201, *allocatur denied*, 537 Pa. 633, 642 A.2d 486 (1994). Unfortunately, while *In re M.K.* accurately quotes *In re Frank W.D.*, 315 Pa.Super. 510, 517, 462 A.2d 708, 711 (1983), *In re Frank W.D.* does not accurately quote its source, *In re Custody of Neal*, 260 Pa.Super. 151, 393 A.2d 1057 (1978), for *Neal* simply states that "appellate review of child custody cases is of the broadest type." *Id.* at 152, 393 A.2d at 1058. *Neal* cites to both *Commonwealth ex rel. Holschuh v. Holland–Moritz*, 448 Pa. 437, 292 A.2d 380 (1972) and *Tobias v. Tobias*, 248 Pa.Super. 168, 374 A.2d 1372 (1977),

both of which state that our scope of review is broad. Sadly, we have been perpetuating a misquotation and thus confusing scope with standard of review in child placement cases.

"Scope of review" and "standard of review" are often—albeit erroneously—used interchangeably. The two terms carry distinct meanings and should not be substituted one for another. "Scope of review" refers to "the confines within which an appellate court must conduct its examination." *Coker v. S.M. Flickinger Company, Inc.*, 533 Pa. 441, 450, 625 A.2d 1181, 1186 (1993). In other words, it refers to the **matters** (or "what") the appellate court is permitted to examine. In contrast, "standard of review" refers to the **manner** in which (or "how") that examination is conducted.... [W]e also referred to the standard of review as the "degree of scrutiny" that is to be applied. *Id.*, 625 A.2d at 1186.

*Morrison v. Commonwealth, Dept. of Public Welfare*, —— Pa. ——, ——, 646 A.2d 565, 570 (1994) (emphasis in original).

This distinction is important. To facilitate our broad review, we require the hearing judge to furnish a "full and complete explanation of the reasons underlying his decision, which reasons should be set forth in a complete, comprehensive Opinion." *Neal*, 260 Pa.Super. at 153, 393 A.2d at 1058 (quoting *Commonwealth v. ex rel. Fox v. Fox*, 216 Pa.Super. 11, 17–18, 260 A.2d 470, 473 (1969); *see also Tobias*, 248 Pa.Super. at 171–73, 374 A.2d at 1374. The majority does not hold that the ten-page opinion of the Honorable Robert L. Wolfe is deficient. Our scope of review, therefore, in determining the propriety of a decision to terminate parental rights "is limited to whether the decision of the court below was supported by competent evidence." *In re E.S.M.*, 424 Pa.Super. 296, 302, 622 A.2d 388, 391 (1993). Where the hearing judge has fully supported her reasons for severing parental rights, and the record buttresses those reasons, we will not reverse her decision "[a]bsent an abuse of discretion, an error of law or insufficient evidentiary support for the ... decision." *Id.* (citation omitted).

We will not presume an abuse of discretion when the hearing judge complies with the requirements outlined in *Neal* and *Tobias, supra. Neal*, 260 Pa.Super. at 152–54, 393 A.2d at 1058. "The term 'discretion' imports the exercise of judgment, wisdom, and skill so as to reach a dispassionate conclusion, and discretionary power can only exist within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge." *Id.* 533 Pa. at 447, 625 A.2d at 1184 (citation omitted). An abuse of discretion occurs not merely when there is an error of judgment, but when that judgment is "manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias, or ill will." *Id.* at 447, 625 A.2d at 1185 (citation omitted). In other words, the decision has to have merit. *Id.*

In reviewing such decisions, "we generally defer to the trial court's judgment because, by virtue of its position, it is uniquely qualified to determine factual matters." *Id.* at 452, 625 A.2d at 1187. The trial court's on-the-scene evaluation gives it a vantage point more suited to review the facts than an appellate court, which is limited by the cold record. *Thompson v. City of Philadelphia*, 507 Pa. 592, 599, 493 A.2d 669, 672–73 (1985). In the case *sub judice*, I find no indication that the hearing court's decision was the product of prejudice, ill-will, bias, or partiality. As the majority admits, "[t]his is a most difficult case." Majority opinion at 881. In such difficult cases, the final outcome is determined by all of the insights, experiences, and legal training a judge brings to bear. To say that we, with our experience, training, and philosophies, would have rendered a different decision is a far cry short of impugning the merit of the determination under consideration. I would therefore find no abuse of discretion in Judge Wolfe's decision.

Nor does the majority point to any error of law made by the hearing court, apart from a failure by appellee to show that proper parental care and control was not available, and that the evidence supporting a judgment of dependency did not meet the required clear and convincing standard. Both of these rulings in effect state that the evidence is insuf-

ficient to find five of the six children to be dependent.

In reviewing sufficiency-of-the-evidence claims, our standard of review "is limited to viewing the evidence in the light most favorable to ... the verdict winner; our sole duty is to decide whether there was sufficient evidence to sustain the verdict." *Matter of B.R.*, 408 Pa.Super. 345, 350–51, 596 A.2d 1120, 1123 (1991). The majority does not look at the evidence in the light most favorable to Warren County Children and Youth Services (CYS), the verdict winner. In that light, I would find the following: appellant-mother was ordered by the court not to allow older men to enter the M. home without written permission from CYS; appellant-mother violated that order by allowing men into the home, one of whom even lived in the attic; the children were improperly supervised; one daughter, T.M., had been raped and fondled by several men; appellant-mother had been alerted to an alleged history of sexual misconduct of one of these men, yet seemed to do nothing to keep him away from the children; and, the rape occurred as the perpetrator was on his way to pick up not only his nine-year-old victim, but also several of her sisters.

The majority appears to substitute its judgment for that of the hearing court, an impermissible task we are ill-suited to accomplish. When viewed in the light most favorable to CYS, I would hold that the evidence is sufficient to find that there was inadequate supervision of the six M. children adjudicated dependent. *See In Interest of Palmer*, 404 Pa.Super. 314, 318, 590 A.2d 798, 800 (1991) ("In order to find a child 'dependent' under the Juvenile Act [42 Pa.C.S.A. § 6301 *et seq.*], it must be shown that the child is 'without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals.' 42 Pa.C.S.A. § 6302.").

After having agreed that the evidence is sufficient to adjudicate T.M. dependent, the majority goes on to state that "[t]here is no competent evidence, however, to support the

trial court's finding that any other children were dependent." Majority opinion at 10. The trier of fact is the sole arbiter of T.M.'s credibility. *In re Adoption of B.G.S.*, 418 Pa.Super. 588, 614 A.2d 1161 (1992). Having accepted T.M.'s testimony as competent and sufficient to determine her own dependency, it is inconsistent that we should reject that same testimony as being incompetent, incredible, or insufficient to determine the dependency of her siblings. If the case in support of finding five of the children dependent is based on "innuendo and suspicion," [1] then the determination that T.M. is dependent is equally suspect. The majority realizes, however, that to question the hearing court's factual determinations regarding T.M.'s testimony impermissibly interjects us into the fact-finding province of the trial court.

The hearing court did not adjudicate five of the children to be dependent simply because their sibling was judged to be dependent; [2] nor does this case turn on whether or not each of the children is an actual victim of sexual abuse. The children were not adjudicated dependent because they were sexually molested. The charges of rape and molestation were leveled against third parties to the action herein. That a friend or neighbor raped T.M. is not the reason T.M. has been placed outside the home. It is the proof that appellant-mother has failed to adequately supervise and protect her children. No parent is a deficient caretaker because a child is harmed. She can be judged to be dysfunctional, however, for allowing her children to be repeatedly placed in harm's way. More to the point, she certainly abrogates her parental responsibilities when she knowingly invites that harm into her children's home. That more children were not sexually abused is a result of felicitous fortune, not familial fidelity.

For the foregoing reasons, I join with the majority in affirming the hearing court's order finding T.M. dependent. I dissent from that part of the decision reversing the hear-

---

1. *See* majority opinion at 881.

2. *See* majority opinion at 881.

ing court's determination regarding the other five children.[3]

**3.** Appellant-mother also raises the claim that counsel for the children was ineffective for not assisting one of the children, M.M., in her desire to be reunited with appellant-mother. Given that M.M. testified that she wished to return home, I would find this argument without merit.

*See* N.T. 12/8/93 at 51, 65. The majority did not address this issue because its decision finds in favor of appellant-mother on other grounds, and, accordingly, does reincorporate M.M. into appellant-mother's household.