**In the Interest of S.S.**

C.P. of Lawrence County, No. 20 of 2014, Dep.

*Carolyn J. Flannery*, for Lawrence County CYS.
*Lawrence J. Puntureri*, for natural mother.
*Heather M. Papp-Sicignano*, for natural father.
*Deborah A. Shaw*, guardian ad litem.

HODGE, *J.*, July 22, 2014—This opinion is issued pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellant Procedure in support of the order of court dated May 21, 2014 adjudicating the subject minor child,

hereinafter, "S.S."), dependent pursuant to 42 Pa.C.S. §6302(1). The natural father, Shawn Snyder (hereinafter, "father") appeals from the May 21, 2014 order and contends that this court committed the following errors:

1. The trial court erred in finding the minor child to be dependent pursuant to 42 Pa.C.S.A. §6302(1);

2. The trial court erred in evaluating the weight and sufficiency of the evidence offered by the petitioner, Children and Youth Services of Lawrence County (hereinafter, "CYS");

3. The trial court erred in failing to place the minor child with the paternal grandmother; and

4. The trial court's determinations violate the father's constitutional right to rear his child without undue government interference.

Before addressing each of father's issues raised on appeal, the court will provide the following background of this case:

Prior to a dependency petition being filed, the minor child, S.S., born October 23,. 2003, lived with his natural father, Shawn Snyder (hereinafter, "father") paternal grandmother at 2305 Garner Road, Edinburg, Lawrence County, Pennsylvania 16116. Natural mother, Bubnen Pratuntit (hereinafter, "mother"), presently lives in Switzerland. Her involvement with the minor child is unclear, but the transcripts from the 72-hour hearing inferred that minimal contact is maintained between mother and S.S.

On April 4, 2014, S.S. told his school teacher that his father, Shawn Snyder (hereinafter, "father"), had "picked him up and threw him" earlier that morning. S.S. relayed

to his teacher that, after throwing the child, father told S.S., "I am this close to punching you in the face and killing everyone." S.S. also told his school psychologist about the incident, but included the fact that he "knocked some things over and dad threw a Coke bottle at him, grabbed him by the chest and threw him." Given the minor child's allegations, the school teacher and psychologist involved initiated a child-line with Lawrence County Children and Youth Services, (hereinafter, "CYS" or the "Agency"). Shortly thereafter, Tynesha Lee, a caseworker from the Agency met with S.S., and S.S. told her that he was fearful to return to his home, and he did not feel safe at home because the father might hit him again.

Based upon the information gathered during her investigation with the minor child, the school teacher and the school psychologist, Ms. Lee appeared before this court on April 4, 2014 requesting an ex parte hearing and requested the court to grant CYS custody of the minor child pending a 72-hour hearing. The court determined that Ms. Lee's testimony warranted a finding that S.S. was without proper parental care or control necessary for his physical, mental and emotional health. A 72-hour hearing was held before the Juvenile Master, Susan S. Papa, Esquire, on April 7, 2014. Following said hearing, the Juvenile Master determined that CYS met their burden of proving placement was warranted and adjudicated the minor child dependent. Further hearings were then held before the Juvenile Master on April 28, 2014 and May 16, 2014, following which the minor child remained adjudicated dependent and was placed in foster care. On May 21, 2014, this court entered an order of adjudication and disposition, which incorporated the recommendations of the Juvenile Court Master. From this order, father appeals.

The standard of review utilized by the appellate court in cases is broad. However, the scope of review is limited in a fundamental manner by our inability to nullify the fact-finding of the lower court. A trial court is afforded great weight to its own findings because it is in the position to observe and rule upon the credibility of the witnesses and the parties who appear before it. Therefore, a trial court's findings must be affirmed if they are supported by competent evidence. *In re R.R.*, 86 A.2d 1316, 1317_(Pa. Super. 1996) (internal citations omitted).

Section 6302 of the Pennsylvania Juvenile Act defines a dependent child in various capacities. Pursuant to 42 Pa.C.S.A. §6302(1), a dependent child is one who:

> is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk, including evidence of the parent's, guardian's or other custodian's use of alcohol or a controlled substance that places the health, safety or welfare of the child at risk[.]

> \*\*\*

It is well settled that dependency proceedings "concern themselves with the correction of situations in which children are lacking proper parental care or control." *In Interest of J.M.*, 652 A.2d 877, 880 (Pa. Super. 1995) (citations omitted). "Whether a child is lacking proper parental care and control encompasses two discrete questions: 1) Is the subject child at this moment without proper parental care or control; 2) If so, is such care and

control immediately available?" *In Re Jeffrey S.*, 628 A.2d 439, 440 (Pa. Super. 1993) (citations omitted). In any dependency proceeding, the petitioner carries the burden of proof and must show that the juvenile is without proper parental care, and that such care is not available immediately. *In the Interest of J.M.*, 652 A.2d at 880. "Both of these determinations must be supported by clear and convincing evidence." *In the Interest of JOV*, 686 A.2d 421, 423 (Pa. Super. 1996) (citation omitted). Such a conclusion requires that testimony be "so clear, direct, weighty, and convincing as to enable the trier of facts to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *In Re S.M.*, 614 A.2d 312, 313 (Pa. Super. 1992) (citation omitted).

A finding of abuse may support an adjudication of dependency. *In the Matter of Read*, 693 A.2d 607 (Pa. Super. 1997); *In Interest of J.M.*, *supra*; *In the Interest of J.R.W.*, 631 A.2d 1019 (Pa. Super. 1993). When the court's adjudication of dependency is premised upon physical abuse, its finding of abuse must be supported by clear and convincing evidence. *In the Matter of Read*, *supra*; *In Interest of J.R.W.*, *supra*. In matters where the abuse or neglect is of such a nature that it would not occur except by reason of the acts or omissions of the parent or other person responsible for the welfare of the child, evidence of the same shall be prima facie evidence of child abuse by the parent or other person responsible for the welfare of the child. 23 Pa.C.S.A. §6381(d).

This lessened standard of establishing abuse by the caretakers, coupled with the clear and convincing evidence necessary to find dependency, has been imposed by the legislature as the standard which the Juvenile Court must apply in deciding abuse cases. Prima facie evidence is not the standard that establishes

the child has been abused, which must be established by clear and convincing evidence; it is the standard by which the court determines whom the abuser would be in a given case. There is no conflict, constitutional or otherwise, with the clear and convincing evidence standard imposed by the act to establish child abuse. The legislature has determined that the likelihood clearly established abuse has occurred, other than at the hands of the custodian, is so small that prima facie evidence the custodian has caused the injury, either by acts or omissions, is all that is required. [The court] find[s] no defect in this reasoning. Such a standard provides maximum protection for the child victim or other children in the community who might be subject to similar abuse if the alleged abuser was not identified and permitted free access to the victim or other vulnerable children. It is not equivalent to a finding of guilt in a criminal proceeding which could result in deprivation of freedom. Thus the legislature has balanced the needs of society and children for protection against the abuser's possible patterned behavior and his/her right to freedom unless found guilty beyond a reasonable doubt.

*In Interest of J.R.W.*, 631 A.2d at 606.

After reviewing the testimony presented at the 72-hour hearing held on April 7, 2014, the court finds that the Juvenile Master's determination regarding adjudication was appropriate. The agency caseworker testified that S.S. consistently informed his teacher, psychologist and the agency caseworker, Ms. Lee, that father picked him up and threw him against a table. S.S. stated that, because of his father's actions, he did not feel safe returning home. (N.T. April 7, 2014, pp. 9-15). The Master's findings as to credibility and viability of facts are given considerable

deference by this court, and based upon the testimony contained in transcript from the April 7, 2014 proceedings, the Master's findings of abuse were clearly established, and leave this court without hesitation as to the veracity of the facts presented.

The court acknowledges that parents are not prohibited from using corporal punishment to discipline their children. *City of Philadelphia, Office of Children, Youth and Family Services v. Department of Public Welfare*, 767 A.2d 10, 12 (Pa. Cmmw. 2001)(citing *Boland v. Leska*, 454 A.2d 75 (Pa. Super. 1982)). "However, corporal punishment may not be used if it is designed or known to create a substantial risk of death, serious bodily injury, disfigurement, extreme pain or mental distress or gross degradation." *Id.* The Child Protective Services law contains the current statutory guidelines, which are contained in the Child Protective Services Law, set forth many of the same prohibitions against excessive punishment as does the Superior Court of Pennsylvania in *Boland. See* 23 Pa.C.S. §§ 6301-6385. Specifically, in Section 6303(b) (8) of the law, the term "child abuse" includes: "Any recent act or failure to act by a perpetrator which causes non-accidental serious physical injury to a child under 18 years of age." 23 Pa.C.S. § 6303(b)(i). Furthermore, Section 6303(a) defines the term "serious physical injury" as any injury that:

(1) causes a child severe pain; or

(2) significantly impairs a child's physical functioning, either temporarily or permanently.

23 Pa.C.S. § 6303 (a).

Father's own testimony indicates that he does not utilize corporal punishment when disciplining S.S. Rather, father indicated that the child often needs to be addressed in a

stern and repetitive manner to draw his attention. Based on father's testimony, the court believes that something happened in father's residence on April 4, 2014 causing the minor child to exhibit some impairment to his social and mental health. This case begs for counseling and immediate implementation of family service planning so that father and S.S. can develop appropriate skills so that they may each communicate their own expectations and needs. The Juvenile Master's recommendations made on the record are consistent with the court in this regard.

The court will address father's next contention that the court erred in failing to place the minor child in a kinship care setting, specifically, with the paternal grandmother. The statute outlining alternative family placement, otherwise known as the Kinship Care Program, provides, in pertinent part:

> (b) Placement of children. — If a child has been removed from the child's home under a voluntary placement agreement or is in the legal custody of the county agency, the county agency shall give first consideration to placement with relatives. The county agency shall document that an attempt was made to place the child with a relative. If the child is not placed with a relative, the agency shall document the reason why such placement was not possible.

62 P.S. §1303(b).

Kinship care is a subset of foster care where the care provider already has a close relationship to the child. In kinship care, legal custody of the child remains with the agency, and the agency places the minor child with an appropriate caregiver who is typically a family member. *In re J.P.*, 998 A.2d 984, 987, n. 3 (Pa. Super. 2010). The court may place children with a foster family, although

there might be willing relatives, where foster care is in the best interests of the children or aggravated circumstances exist. *In re R.P.*, 957 A.2d 1205 (Pa. Super. 2008) (holding court properly declined proposed kinship care arrangement due to aggravated circumstances, where mother knew father was abusing child but failed to protect child from further abuse; children's grandfather was widower with pacemaker who lived close to father, and children's uncle had no experience in raising children; placement of children with relatives would put children at further risk of abuse); *In re C.J.R.*, 782 A.2d 568 (Pa. Super. 2001) (holding court properly declined to remove children from foster home and place them with biological grandparents, where removal from foster home could stunt positive gains in belated development due to "failure to thrive" diagnosis, and grandparents came from dysfunctional family environments). The goal of preserving the family unit cannot be elevated above all other factors when considering the best interests of children, but must be weighed in conjunction with other factors. *In re Davis*, 465 A.2d 614, 621 (Pa. 1983).

In the instant case, the record establishes that the paternal grandmother, Mary Ann Snyder (hereinafter, "grandmother"), was considered for kinship care placement. A CYS caseworker conducted a home evaluation of grandmother's residence on April 15, 2014. The case worker found grandmother's home to be an appropriate residence for S.S., and the caseworker went over the paperwork necessary for S.S. to be placed with grandmother pending a final resolution of these proceeding. However, the caseworker discovered that father intended to continue to live on the property where grandmother's residence was located, but in a different trailer located in the backyard. Father was informed that

these accommodations would not be appropriate and father obtained a residence at a local motel. On April 25, 2014, an Agency caseworker went to the motel where father indicated he was residing, and the caseworker obtained a receipt stating that father had paid a month of rent there. However, it did not appear that anyone was actually living in the motel room. When the caseworker asked father if he was actually staying at the motel, father replied "no."

In light of the above facts, in combination with CYS' hesitation regarding whether grandmother would comply with their requirements that father not be permitted to see S.S. outside of the agency's supervision, the court agrees with the Juvenile Master that grandmother is not an appropriate kinship care provider at this time.

The allegations involved are very serious, and grandmother admitted to being present in the residence on April 4, 2014 when the incident between father and S.S. occurred. The agency has consistently expressed its end goal of reunification in this case, but the court understands that the agency cannot effectively facilitate this goal if the agency cannot ensure that all family members involved are cooperating and implementing the standards set forth in the family service plan.

For these reasons, the court believes that the order of court issued on May 21, 2014 should be affirmed in its entirety.

## ORDER OF COURT

And now, this 22nd day of July, 2014, with the court having received a concise statement of errors complained of on appeal, filed on behalf of the natural father, Shawn Snyder, in the above captioned case, and with the court issuing the attached opinion, pursuant to Rule 1925(a) of

428

the Pennsylvania Rules of Appellant Procedure in support of the order of court dated May 21, 2014, the court hereby directs the prothonotary shall assemble the record and transmit the same to the prothonotary of the Superior Court as required by the applicable rules of appellate procedure.

The prothonotary shall properly serve notice of this order of court and opinion upon counsel of record for the parties and upon any unrepresented party at their last known address as contained in the court's file.