J-A16002-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: N.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: J.M., MOTHER | : | |
| | : | |
| | : | No. 149 EDA 2022 |

Appeal from the Order Entered December 7, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-DP-0000072-2021

BEFORE:   McLAUGHLIN, J., McCAFFERY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY McLAUGHLIN, J.:                **FILED AUGUST 12, 2022**

J.M. ("Mother") appeals from the order adjudicating N.M. ("Child"), born November 2020, dependent. Mother argues the trial court erred when it found Child dependent and placed her in kinship care, erred in its evidentiary rulings, and violated her Due Process rights. We affirm.

The trial court set forth the factual and procedural history, which we adopt and incorporate herein. Trial Court Opinion, filed Jan. 26, 2022, at 1-10 ("Trial Ct. Op."). We will provide a summary.

In 2017, prior to Child's birth, Child's five older siblings came into DHS's care due to concerns regarding domestic violence, substance abuse, mental health, and housing. *Id.* at 2. In September 2019, DHS received a GPS report that Mother tested positive for methadone when she gave birth to another of

_____

[*] Retired Senior Judge assigned to the Superior Court.

Child's siblings. ***Id.*** Approximately 14 months later, in November 2020, Child was born. Mother tested negative for substances at the time of Child's birth, but DHS received a report that she had tested positive for cocaine, PCP, and fentanyl during her pregnancy. N.T., 8/17/2021, at 13-14. DHS received a GPS report in January 2021, that Child had been admitted to St. Christopher's Hospital. ***Id.*** at 12-13. Child was transferred to CHOP. Mother was escorted from CHOP after she threatened to remove Child against medical advice. ***Id.***; N.T., 8/17/2021, at 25. DHS obtained an order for protective custody in January 2021, and, after a shelter care hearing, the court found Child medically needed and ordered the temporary commitment to stand. Trial Ct. Op. at 2-3.

The trial court held a multi-day adjudicatory hearing. At the first day of the hearing, in June 2021, it heard from the Community Umbrella Agency's ("CUA") case manager/supervisor Joshua Hage. He testified there were concerns regarding Mother's drug and alcohol history, mental health, domestic violence, anger management, and housing. N.T., 6/16/2021, at 83. Although Mother had drug screens through Gaudenzia, he was unable to confirm whether they were random. ***Id.*** at 85-86. Hage testified Mother's visits were moved from supervised at the CUA to supervised at DHS due to Mother's erratic behavior and threats she made. ***Id.*** at 91-92.

The court resumed the proceedings in August 2021. DHS investigative worker Erica Payne testified that Mother signed consent forms for Gaudenzia and Best Behavioral Health but refused to sign releases for her prenatal care.

N.T., 8/17/2021, at 14-15, 18. She further testified that Mother did not keep the appointment for a home assessment. *Id.* at 20-21. Payne had concerns regarding Mother's mental health, impulse control, defensiveness, minimal compliance with the investigation, and drug and alcohol history. *Id.* at 27-28. Payne testified that Mother was in treatment and provided screens, but DHS was unable to determine whether the screens were random. *Id.* at 28.

Hage resumed his testimony, stating he had concerns regarding Mother's mental health because of her failure to consistently attend treatment at Best Behavioral Health and her mental health diagnoses, including post traumatic stress disorder, anxiety, depression, and cocaine and opioid dependency. *Id.* at 88, 99-100. Hage testified he did not think a mother-baby program was appropriate due to concerns about Mother's protective capacity. *Id.* at 113-14. Hage further testified that Mother did not have suitable housing. *Id.* at 101. She resided with maternal grandmother, who did not want her home to be considered a reunification resource. *Id.* Mother's visits were supervised at DHS, due to her outbursts and the agency's concerns for safety. *Id.* at 104.

In November 2021, the court held the final day of the adjudicatory hearing. CUA case manager Ericka Mitchell testified. She had been assigned the case in September 2021 and had concerns regarding Mother's mental health, including her aggressive and erratic behavior. N.T., 11/19/2021, at 18-19. She testified Mother showed aggressive behavior throughout the case, including threatening a case aide and the foster parents of Child's sibling. *Id.*

at 19, 23. She further testified Mother refused to sign mental health releases. *Id.* at 25. She stated Mother obtained random drug screens from Gaudenzia and the most recent was negative. *Id.* at 32. Further, Mother completed a parenting course and Mitchell did not have concerns regarding Mother's parenting. *Id.* at 33-34. Mitchell further testified Mother attended five out of seven individual therapy sessions since August 2021. *Id.* at 92. Mother was approved for housing in Westmoreland County, but the housing was conditioned on her being reunited with all seven children. *Id.* at 47-48. That was no longer viable due to a pending termination petition for two of the children. *Id.* at 95-96.

Mother's OB/GYN, Dr. Michelle Duncan, testified on Mother's behalf. She testified that Mother tested negative for controlled substances at Child's birth and did not test positive for any substances while the doctor was treating Mother in 2020. N.T., 8/17/2021, at 62-63, 84. The Director of the Gaudenzia WINNER program also testified. The WINNER program is a mother-baby program that had accepted Mother. *Id.* at 152-69.

Mother testified that she had been clean for two years and that she was compliant with her mental health treatment, which she found helpful. N.T., 11/19/2021, at 113, 117-18.

Child's foster parent testified that she did not think Mother continued to have substance abuse issues and, although Mother had mental health issues, she did not believe they would impact her ability to care for Child. *Id.* at 172-79.

- 4 -

The trial court adjudicated Child dependent in December 2021. Mother filed a timely notice of appeal.

Mother raises the following issues:

> 1. Was Mother, J.M., denied Due Process, in that the evidence presented by DHS was largely inadmissible hearsay?
>
> 2. Did DHS fail to prove grounds for dependency by "clear and convincing" evidence?
>
> 3. Did the trial court err in ordering that the child remain in state custody?
>
> 4. Did the court err by denying Due Process of Law to J.M., Mother, as guaranteed by the Constitutions of the Commonwealth of Pennsylvania and of the United States of America?

Mother's Br. at 4.

We will address Mother's first and fourth issues together. In her first issue, Mother argues that DHS's evidence was mostly inadmissible hearsay, which impacted Mother's ability to cross-examine adverse witnesses. In her fourth issue, Mother argues she was denied due process because the decision was based on inadmissible hearsay, and not on competent evidence. She claims that "[b]y committing errors of law in conducting the proceedings which led to termination of the parental rights of Mother," the trial court "necessarily violated her fundamental rights." Mother's Br. at 19.

Mother waived these issues because she did not raise them with sufficient detail in her statement of errors complained of on appeal pursuant to Pennsylvania Rules of Appellate Procedure 1925(b). Rule 1925(b) requires

the appellant to "concisely identify" in the statement "each error that the appellant intends to assert with sufficient detail to identify the issue to be raised for the judge." Pa.R.A.P. 1925(b)(4)(ii). Any issues not included in the 1925(b) statement, or not raised in accordance with the Rule, are waived. Pa.R.A.P. 1925(b)(4)(vii).

In her 1925(b) statement, Mother raised the following issues:

> 1. Ruling that [Child] be adjudicated dependent without holding an adjudicatory hearing.
>
> 2. Ruling that [Child] be committed to DHS, without holding a dispositional hearing.
>
> 3. Ruling as stated above, without making findings, determinations, and orders required by the Juvenile Act and by court rules, including but not limited to, Pa.R.J.C.P. 1401.
>
> 4. Failing to rule upon [Mother's] Motion for Reconsideration, thus forcing [Mother] to choose between 1) losing her rights to obtain relief, and 2) filing this Appeal, and divesting the Trial Court of jurisdiction to take further action.
>
> 5. Denying Due Process of Law to [Mother], as guaranteed by the Constitution of the Commonwealth of Pennsylvania and of the United States of America.
>
> 6. [Mother] reserved the right to expand and to supplement this Concise Statement, and to raise any additional issues in her Appellant's Brief, for the following reasons:
>
>> a. Pursuant to Children's Fast Track Rules, this Concise Statement is being filed at the same time as is the Notice of Appeal and Order for Transcript,
>>
>> b. Therefore, this Concise Statement must be prepared and filed without benefit of a copy of the Transcript.

Concise Statement of Matters Complained of on Appeal, filed Jan. 5, 2022. Mother did not seek to amend her 1925(b) statement after receipt of the transcript.

Here, Mother's Rule 1925(b) statement did not elaborate on the substance of her due process claim. As a result, the trial court did know the nature of the alleged due process violation. **See** Trial Ct. Op. at 18-19 (noting Mother's "broad assertion does not state the basis of the denial of Mother's due process rights," and that it "could not speculate what" was intended, and noting that Mother was provided an opportunity to participate at each listing and to present her evidence and testimony). The statement did not apprise the judge of the issue it should discuss.

Although Mother attempted to "reserve" a right to raise new claims on appeal because she filed the Rule 1925(b) statement without the benefit of a transcript, this is not permissible. Nothing in the rule or in caselaw affords an appellant an absolute right to amend a Rule 1925(b) statement without the court's permission. There was thus no right to "reserve." Counsel could have sought the trial court's leave to amend the Rule 1925(b) statement, but did not. **See** Pa.R.A.P. 1925(b)(2)(i) (permitting court, on application and for good cause, to "permit an amended to supplemental Statement to be filed"). Furthermore, it appears the due process claim is based at least in part on alleged evidentiary errors. As counsel was present at the hearing and appears to have based a separate claim on the evidentiary issues, such errors were

known at the time of the filing of the Rule 1925(b) statement, without aid of the transcript.

In her second issue, Mother claims DHS did not prove dependency by clear and convincing evidence. She argues the evidence was mostly inadmissible hearsay and, even if the hearsay is considered, it did not prove dependency. The evidence concerned events that occurred two to three years in the past and the events were not relevant to her current ability. She argues that an adjudication of dependency must be based on her current conduct and condition.

We review orders entered in dependency cases for an abuse of discretion. ***In re R.J.T.***, 9 A.3d 1179, 1190 (Pa. 2010). We must accept the findings of fact and credibility determinations if they are supported by the record, but we are not required to accept the trial court's inferences or conclusions of law. ***Id.***

A "dependent child" includes a child who "is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals." 42 Pa.C.S.A. § 6302 (**"Dependent child"**). "A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent . . . that places the health, safety or welfare of the child at risk," including evidence of the parent's "use of alcohol or a controlled substance that places the health, safety or welfare of the child at risk." ***Id.*** The petitioner must demonstrate by clear and convincing evidence that a child meets the

statutory definition of a dependent child. ***In re G.T.***, 845 A.2d 870, 782 (Pa.Super. 2004).

The trial court concluded the testimony at the hearing supported the adjudication, reasoning it had heard testimony that Child's health and safety were at risk because of Mother's present inability to provide adequate care for Child. It commended Mother for making progress to alleviate the dependency issues but stated it continued to have concerns with Mother's ability to provide adequate care for Child. It noted the unavailability of provably random drug screens, and issues with Mother's housing, anger management, and mental health. ***See*** 1925(a) Op. at 15. The court added that Mother's visits are supervised with increased security due to Mother's threatening behavior. After review of the briefs, trial court record, relevant law, and the well-reasoned opinion of the Honorable Cateria R. McCabe, we affirm on the basis of the trial court opinion. 1925(a) Op. at 12-16.

In her third issue, Mother asserts the court erred in ordering that Child remain in DHS's custody. She claims the court provided no analysis or mention as to whether DHS made reasonable efforts, and no evidence of the same.

Where a child is adjudicated dependent, a court "may not separate that child from his or her parent unless if finds that the separation is clearly necessary." ***In re G.T.***, 845 A.2d at 873. "Such necessity is implicated where the welfare of the child demands that he . . . be taken from his parents' custody." ***Id.*** (quoting ***In Int. of J.M.***, 652 A.2d 877, 881 (Pa.Super. 1995)).

The trial court concluded it heard credible testimony that outstanding dependency issues existed that would affect Mother's ability to provide adequate care for Child. It acknowledged Mother had made progress but found Mother's mental health was not stable enough to reunify with Child. It further pointed out it had heard credible testimony that Mother had threatened to physically harm the foster parent of Child's sibling. It noted Mother had not signed mental health releases until November 2021, so it was unaware if Mother's current health treatment provider was addressing all of Mother's mental health issues and that the CUA was unable to assess Mother's housing. The court concluded reunification would create a health and safety risk for Child and Child's best interest would be met in kinship care.

We conclude the trial court did not abuse its discretion. After review of the briefs, the trial court record, the relevant law, and the trial court opinion, we affirm on the basis of the trial court opinion. ***See*** 1925(a) Op. at 17-18.[1]

Order affirmed.

---

[1] Mother argues that the trial court failed to make any findings regarding reasonable efforts under 42 Pa.C.S.A. § 6351(b)(2). Section 6351(b)(2) provides that prior to entering an order finding a child dependent the court shall make findings as to "whether reasonable efforts were made prior to the placement of the child to prevent or eliminate the need for removal of the child from his home, if the child has remained in his home pending such disposition." Here, Child had not remained in the home pending the disposition.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>8/12/2022</u>