689 A.2d 954

**In the Interest of T.M.**

**Appeal of YORK COUNTY CHILDREN & YOUTH SERVICES.**

Superior Court of Pennsylvania.

Submitted Nov. 25, 1996.

Filed Feb. 24, 1997.

Wanda D. Neuhaus, York, for appellant.

Linda S. Hollinger, York, for appellee.

Jeffrey C. Marshall, York, for C.M., father, participating party.

Carolyn Lasky, York, for R.K., mother, participating party.

Before DEL SOLE, JOHNSON and BROSKY, JJ.

JOHNSON, Judge.

This case involves an Alleged Dependent Child Petition filed by York County Children and Youth Services (CYS) regarding an infant child, T.M. The York County Court of Common Pleas found that T.M. is not a dependent child. Because we find that CYS has not established by clear and convincing evidence that T.M. is without the proper parental care or control necessary for her welfare, we affirm the trial court's order.

T.M. was born on November 11, 1995. On February 1, 1996, CYS filed a Petition for Emergency Placement, alleging that T.M. was without proper parental care or subsistence and that there was an imminent threat to her health, safety and well-being. Specifically, T.M.'s doctor had reported to CYS that she may suffer from a failure to thrive. CYS's petition was granted, and T.M. was placed in a nearby hospital for testing. The tests revealed nothing remarkable about T.M.'s health other than a mild reflux condition that did not require medical intervention. Following T.M.'s release from the hospital one week later, the court entered an order that returned T.M. to Mother, but ordered that both T.M.'s Mother and Father cooperate with several social service agencies regarding parental training and that Mother and Father cooperate with CYS's attempts to evaluate T.M.'s progress. Order, entered February 7, 1996.

On February 22, 1996, CYS filed another Petition for Emergency Placement, alleging that Mother and Father had failed to cooperate with social workers and visiting nurses in violation of the Order. CYS further alleged that T.M. was without proper parental care and supervision due to several domestic

disputes that had occurred in the home and had resulted in police intervention. CYS alleged that, because of Mother's failure to cooperate and the stress and instability in Mother's home, T.M. continued to be at risk for the failure to thrive. After receipt of this petition, the court placed T.M. in foster care pending a hearing on CYS's allegations. CYS then filed an Alleged Dependent Child Petition.

Following CYS's presentation of its case on the dependency petition, the court granted Mother and Father's joint motion for a demurrer, stating that CYS had failed to establish that T.M. fell within the dependency sections of the Juvenile Act. CYS has filed the instant appeal and now claims that it had proved, by clear and convincing evidence, that T.M. was dependent.

Whether a child is dependent is defined in the Juvenile Act ("the Act"), which provides, in pertinent part, as follows:

**"Dependent child."** A child who:

(1) is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. . . .

42 Pa.C.S. § 6302.

In a dependency proceeding, the burden of proof is on the petitioner who must establish, by clear and convincing evidence, that proper parental care and control are not available. *In the Interest of J.M.*, 438 Pa.Super. 409, 652 A.2d 877, *appeal denied*, 541 Pa. 640, 663 A.2d 692 (1995); *see also Matter of B.R.*, 408 Pa.Super. 345, 596 A.2d 1120 (1991). " 'The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.' " *J.M.*, *supra*, at 416, 652 A.2d at 880, quoting *Matter of Sylvester*, 521 Pa. 300, 304, 555 A.2d 1202, 1203–04 (1989). Absent this clear and convincing evidence, a child cannot be judged to be dependent and must be returned to its parent. *Id.*

■ The scope of this Court's review of dependency cases is limited in that we are not permitted to usurp the function of the trial court as the finder of fact. *Id.* We will therefore not overturn the trial court's findings if they are supported by competent evidence. *Id.; see also In re M.K.,* 431 Pa.Super. 198, 203–04, 636 A.2d 198, 201 (1994); *In the Interest of C.L.,* 436 Pa.Super. 630, 636, 648 A.2d 799, 802 (1994); *In re B.B.,* 424 Pa.Super. 399, 405, 622 A.2d 979, 982–83 (1993). Finally, a finding of dependence is not the same thing as a determination of what is in the best interests of the child; courts are limited by the restrictive definitions contained in the Act in determining when a child is dependent. *In re Haynes,* 326 Pa.Super. 311, 318, 473 A.2d 1365, 1368 (1983).

■ CYS, in essence, first argues that Mother and Father's failure to abide by all the requirements of the February 7, 1996, order is prima facie clear and convincing evidence that the parents had not provided the minimum standard of care required by the Act and, therefore, a finding that T.M. is dependent is required. Mother and T.M. missed medical appointments on February 19 and 20, 1996 in violation of the terms of the Order. In addition, Mother and T.M. missed appointments with the perinatal coach on February 12 and 20, 1996. CYS admits that its position regarding the failure to comply with a court order as prima facie evidence of the lack of proper parental supervision and control is not supported by any provision of the Act or of the Child Protective Services Law, 23 Pa.C.S. §§ 6361–78. We decline to adopt CYS's proposal that a prima facie test should be adopted. Instead, we will continue to require CYS to show, by clear and convincing evidence, that the child falls within the Act's definition of a dependent child. We adopt this position in recognition of the seriousness of the nature of these proceedings and the potential harm that could result from adjudicating the merits of a dependency petition without a proper evidentiary foundation. The trial court in these cases is the fact-finder and, as in all matters relating to factual determinations, is better able to evaluate the testimony of witnesses and any documentary evidence submitted in support of a dependency petition. *See,*

*e.g., J.M., supra,* at 416, 652 A.2d at 880–81 (holding that, on review, this Court will give great weight to the findings of the hearing judge because he is able to observe and rule upon the credibility of the witnesses and the parties who appear before him). Thus, while the fact that Mother had missed appointments in violation of the prior order is relevant in determining dependency, that fact is not dispositive.

■ In the alternative, CYS claims that it has established, by clear and convincing evidence, that T.M. was without proper parental care and control and was in imminent risk of serious physical injury. In evaluating this claim, we will review the evidence that was before the trial court.

CYS elicited testimony from Ms. Candy Cunningham, a parenting education instructor and perinatal coach who provides education and support for new mothers. N.T., March 18, 1996, at 126. On February 7, 1996, Ms. Cunningham was asked by CYS to provide support and information to Mother. *Id.* Ms. Cunningham testified that, during a visit to Mother's home, she noticed that Mother was shaking and distracted, and that Mother claimed to need help caring for T.M. *Id.* at 129–30. After that visit, Mother called Ms. Cunningham and stated that she was afraid that if she picked up the crying infant she would drop her. *Id.* at 131. Ms. Cunningham also testified, however, that she felt that T.M. was safe and not at risk at that time. *Id.* at 136.

In addition, CYS presented testimony from Officer Walter Hughes, who responded to two complaints of domestic violence in Mother's home on February 20 and 21, 1996. Mother, Father and T.M. resided in Mother's home with two unrelated adults and their small child; on February 20, 1996, the adults were arguing about house-cleaning and child-care duties when the argument escalated out of control. *Id.* at 172–74. Father told Officer Hughes that Mother had hit him with one of her crutches during the fight. *Id.* at 173. At the time of Officer Hughes's investigation, T.M. was being cared for by the other female adult in the home, in a room separate from Mother. *Id.* at 174–75. Father also told the officer that Mother had

swung at him while he was holding T.M. and inadvertently hit T.M. on her left cheek. *Id.* at 176. During the second incident on February 21, police were called in response to another argument among the same members of the household. *Id.* at 177. A telephone had been ripped out of the wall in the kitchen during this argument. *Id.* at 178. Because Officer Hughes felt that T.M. was in danger, he took emergency custody of her and notified CYS. *Id.* at 179. Officer Hughes stated that the adults in the house appeared to play "tug-of-war" with T.M. in an attempt to aggravate Mother. *Id.* The officer, however, did not observe anything specific on that day to indicate that T.M. was in jeopardy, other than that the home was dirty and "a real mess." *Id.* at 180–81.

CYS caseworker Susan Chestnut testified that she had concerns regarding T.M. such that she would recommend foster care. Specifically, Ms. Chestnut stated that she found both Mother and Father to be immature and unable to focus on T.M.'s needs. N.T., March 26, 1996, at 18. In her opinion, Mother and Father both needed parenting classes. *Id.* at 19. Mother seemed to have unrealistic expectations for T.M., even indicating that the two-month-old baby was manipulating her. *Id.* at 21–22.

Dr. Lance C. Sweeney, T.M.'s doctor, detailed his initial concerns about T.M. being fed solid foods at the age of two months and his concern that T.M. potentially had failure to thrive or shaken baby syndrome. N.T., March 18, 1996, at 13–24. The hospital tests, however, indicated that T.M. had adequate weight gain, and her breathing patterns, blood tests, eye exams, and a CAT scan of the head were all normal; there were no indications of either shaken baby syndrome or a failure to thrive. *Id.* at 24–26. The only test indicating an abnormality was an esophagus probe; that probe showed a mild reflux abnormality which would explain Mother's statements that T.M. vomited quite a bit. *Id.* at 26–27. After T.M.'s hospital stay, Dr. Sweeney recommended that T.M. be returned to Mother. *Id.* at 27–28. Specifically, Dr. Sweeney stated during CYS's questioning that "there had never been any medical evidence of physical abuse on the child." *Id.* at

31. Later, the court asked Dr. Sweeney, "[A]re you of the opinion that there is no medical evidence to show that this mother was either abusive or neglectful of her child?" *Id.* at 55. Dr. Sweeney then replied, "That's correct. That's what I have said from the beginning." *Id.*

In addition to this testimony, Lynn Freeze, a registered nurse who was asked to make a skilled nurse assessment of T.M., testified that her only concerns after visiting Mother's home were that T.M. was being fed inappropriately with solid foods and that there was stress in the home. *Id.* at 116. Janice Schutzenhofer, a visiting nurse, stated that she observed that T.M. was "always clean. She appeared to be well fed. She was always attended to. Whenever we came in the baby was within sight. She always had a clean diaper...." *Id.* at 162. Nurse Schutzenhofer further testified that, overall, Mother was cooperative and T.M. was doing well. *Id.* at 168.

In granting Mother and Father's joint demurrer, the trial court stated that it relied most heavily on Dr. Sweeney's testimony that there was nothing medically wrong with T.M. and that there was no evidence that Mother was abusive or neglectful toward T.M. N.T., March 26, 1996, at 46. After a review of the record in its entirety, we conclude that the trial court's findings are supported by competent evidence. *J.M., supra.* We are unable to say that the trial court erred when it determined, without hesitation, that T.M. was not without the proper parental care or control on the basis of the facts presented by CYS. Mother and Father may need to learn proper parenting skills, but, at this point, our inquiry is limited to a determination of whether T.M. falls within the definition of a dependent child; we cannot evaluate what may be in the best interests of T.M. *Haynes, supra.* Because of this lack of clear and convincing evidence that T.M. was without the proper parental care or control necessary for her health or well-being, we find that the court properly returned T.M. to her parents. *J.M., supra.* Accordingly, we affirm the trial court order that denied CYS's dependency petition.

Order **AFFIRMED.**