J-A13029-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: N.C., A MINOR, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: N.C., A MINOR CHILD, | |
| Appellant | No. 1506 WDA 2014 |

Appeal from the Order Dated August 13, 2014
In the Court of Common Pleas of Allegheny  County
Juvenile Division at No(s): JV-14-001433

BEFORE:  PANELLA, SHOGAN, and OTT, JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED JUNE 18, 2015**

N.C. ("Child") appeals from the order dated August 13, 2014, and filed August 14, 2014, that found she was not a dependent child under the Juvenile Act, 42 Pa.C.S. §§ 6301–6365.   The trial court dismissed the dependency petition filed by the Allegheny County Office of Children, Youth, and Families ("CYF") and ordered Child to remain in the custody of T.C., her stepmother and legal custodian ("Stepmother"), and her father, T.C. ("Father").  We reverse and remand.

Child came to the attention of CYF on July 16, 2014, when it received information that Western Psychiatric Institute and Clinic ("WPIC") was refusing to discharge Child to the care of Stepmother and Father.  A shelter hearing was held on July 18, 2014, wherein the trial court appointed

KidsVoice as Child's guardian *ad litem* ("GAL"). ***Id***. at 6–7. On that date, the trial court entered an order stating:

> THE COURT FURTHER FINDS: [Child] has been in WPIC and was ready for discharge. Due to allegations that [Stepmother] (who for some reason has custody) and [Father] had physically abused [Child]. [Child] is still fearful but does not want to be in shelter. She is now on meds. I am going to, reluctantly, let her return home but told her that she should call her attorney or caseworker or police if she wants out. [M]other lives out of state.
>
> THE COURT FURTHER ORDERS: Child is to return to [S]tepmother and [F]ather. Crisis inhome at the highest level is to be in the home. [C]hild is to be removed if she wants to be removed. [C]hild is permitted to have contact with [M]other.

Order, 7/18/14.

CYF filed a dependency petition on July 24, 2014, and an amended petition on July 25, 2014, alleging Child was dependent pursuant to 42 Pa.C.S. § 6302(1). CYF averred that Child lacked proper parental care and control by Stepmother and Father, who reside together in Stepmother's home. The petitions alleged that Child, born in June of 2000, feared ongoing physical discipline by both Stepmother and Father. The petitions also averred that Child was a victim of child abuse, as defined in the Child Protective Services Law, ("CPSL"),[1] 23 Pa.C.S. § 6303.

On August 13, 2014, the trial court held a dependency adjudication hearing. CYF presented the testimony of David Sprague, a CYF caseworker

---

[1] CPSL, 23 Pa.C.S. §§ 6301–6386. The CPSL was amended effective April 22, 2014, and again on December 31, 2014.

supervisor, and Latoya Lewis, the Three Rivers Youth Crisis In-Home Services worker for the family. N.T., 8/13/14, at 6, 21–22. The GAL presented Child's testimony, *in camera*; N.J. ("Mother"), who lives in Atlanta, Georgia, testified by telephone. *Id*. at 4, 40–41. Father and Stepmother, represented by separate counsel, did not testify. *Id*. at 28.

At the close of the testimony, CYF and the GAL asked the court to find Child dependent under 42 Pa.C.S. § 6302(1) and to give CYF permission to place Child in foster care. N.T., 8/13/14, at 53–54. Stepmother argued that CYF had not met its burden of proof with regard to a finding of dependency under section 6302(1). *Id*. Father, while denying Child's allegations, agreed that Child should be placed in foster care, as he did not believe it was in anyone's interest for Child to return home. *Id*. at 54. The GAL, noting Child's request to live with Mother, asked that CYF explore that feasability. *Id*.

On August 14, 2014, the trial court entered an order declaring that Child was not a dependent child under the Juvenile Act. It dismissed the dependency petition and directed that Child would remain in the custody of Father and Stepmother. Order, 8/14/14. On August 22, 2014, the GAL, on Child's behalf, filed a motion for reconsideration. On September 15, 2014,

J-A13029-15

Child filed a timely notice of appeal[2] and a concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).[3]

On appeal, Child raises the following two issues:

1) Did the Trial Court commit an error of law in dismissing the dependency petition regarding [Child], when undisputed clear and convincing evidence was offered through testimony by [Child], her mother, and other witnesses that she was without proper parental care and control, thus meeting the standard for dependency under 42 Pa.C.S. § 6302(1)?

2) Did the Trial Court abuse its discretion in dismissing the dependency petition regarding [Child], when [Child] testified that she was repeatedly physically maltreated, did not want to return to the family home, and had concerns about her safety if Court and CYF oversight ceased to continue, and no evidence was offered to dispute her testimony?

Child's Brief at 4.

_____

[2] While September 13, 2014, was the last day of the appeal period, it fell on a Saturday; thus the notice of appeal was timely filed on Monday, September 15, 2014. 1 Pa.C.S. § 1908 ("When any period of time is referred to in any statute, . . . [when] the last day of any such period shall fall on Saturday or Sunday, . . . such day shall be omitted from the computation.").

[3] On August 27, 2014, the trial court entered an order scheduling a hearing on the motion for reconsideration for September 24, 2014, but did not expressly grant the motion during the thirty-day appeal period. Thus, it lost the authority to rule on the motion. *Valley Forge Center v. RIB-IT/K.P.*, 693 A.2d 242, 245 (Pa. Super. 1997). On September 24, 2014, the trial court entered an order stating that it did not consider the motion for reconsideration due to the appeal. On November 26, 2014, this Court entered an order directing the trial court to complete and forward the original record to this Court, citing *In re T.S.M.*, 71 A.3d 251, 261 n.21 (Pa. 2013) (regarding delay in the trial court).

- 4 -

We review the relevant testimony at the August 13, 2014 adjudicatory hearing. Mr. Sprague testified as follows: Child was hospitalized in WPIC beginning June 22, 2014. N.T., 8/13/14, at 28. While there, Child disclosed physical abuse by Father and Stepmother. *Id*. WPIC contacted CYF on July 16, 2014, regarding Child's discharge plan, indicating that due to the allegations, WPIC was unwilling to discharge Child to Father's and Stepmother's care. *Id*. CYF obtained an Emergency Custody Authorization and placed child in a shelter. *Id*. at 6–7.

On cross-examination by Stepmother's counsel, Mr. Sprague testified as follows: Mother became incarcerated a few years prior to the hearing. N.T., 8/13/14, at 10. In anticipation of the incarceration, Mother arranged for Child and her siblings to live with Mother's family in Michigan. *Id*. Child reported that she was sexually abused by a cousin while she was living in Michigan. *Id*. After that incident, Father and Stepmother took Child and her two younger siblings into their home. *Id*. at 10–11.

CYF became involved with Father and Stepmother in the fall of 2013, at Stepmother's request for assistance with ongoing housing issues. N.T., 8/13/14, at 11. There are eleven children residing in the home, none of whom has been adjudicated dependent or reported being abused. *Id*. at 11-12. CYF remained involved with the family due to chronic issues between Stepmother and the landlord, and the ongoing possibility of eviction. *Id*.

Upon Child's return from WPIC, Father and Stepmother were unwilling to meet with CYF. N.T., 8/13/14, at 15. Child has a history of mental health issues; she had a prior in-patient admission in 2012 and treatment at the Center for Traumatic Stress ("CTS"). *Id*. at 13–14. Child was discharged from WPIC on July 17, 2014, and was to have outpatient treatment at the WPIC Center for Children and Families, but Mr. Sprague could not confirm whether Child was being treated at WPIC. *Id*. at 13-14.

On cross-examination by the GAL, Mr. Sprague testified that Mother was interested in assuming custody of Child, and Child would like to live with Mother. N.T., 8/13/14, at 19. Father and Stepmother had not responded to attempts to provide services in the home. *Id*. at 20.

Latoya Lewis testified as follows: Stepmother had rejected the services of Crisis In-Home Services. N.T., 8/13/14, at 22. Recently, Ms. Lewis and a colleague from Crisis In-Home Services had been unable to meet with Father and Stepmother, who would not respond to telephone calls or knocks on the door of the home. *Id*. at 23. When Ms. Lewis previously had been in the home, Father and Stepmother precluded Ms. Lewis's one-on-one contact with Child. *Id*. at 23–24.

On cross-examination, Ms. Lewis testified that when crisis-level in-home services are court-ordered, the in-home service workers are expected to be in the home five days each week. N.T., 8/13/14, at 24. In the eight or nine days prior to the adjudicatory hearing, neither Ms. Lewis or the Crisis

In-Home Services worker were able to get into the home to provide services. *Id*. Ms. Lewis reiterated on cross-examination that she had been unable to speak with Child alone. *Id*. at 26. Father knew that Ms. Lewis planned to speak with Child about the discipline allegations when he refused to allow Ms. Lewis into the home. *Id*. at 26-27. Ms. Lewis was last at the home two weeks prior to the hearing, but a colleague had been in the home after that time. *Id*. Child appeared fearful to speak to anyone about the allegations. *Id*.

Child requested to testify *in camera*. N.T., 8/13/14, at 28. She stated that she received daily physical abuse by Father and Stepmother in the form of punches, slaps, and getting "beat down." *Id*. at 29-30. Father and Stepmother threw things at her, and hit her with belts, candles, and pots. *Id*. at 30-31. Child felt safe in the home at the time of the hearing, but feared that the physical beatings would continue when CYF no longer was involved. *Id*. at 31-32. Child preferred to move to a foster home. *Id*. at 32. Child testified that she would like to receive mental health therapy. *Id*. She also stated that she told the police about the physical abuse in the home, but was returned to the home, with CYF services. *Id*. at 33. Child testified that all of the children in the home are punched and slapped. *Id*.

On cross-examination by Stepmother's counsel, Child testified that when she was living with Mother in Atlanta, Children's Services was not involved, and she was never in foster care there. N.T., 8/13/14, at 35.

When Child was living in Michigan with relatives, her cousin raped her in June of 2011, and she called Father to come to get her. *Id*. at 35. Child wished to live with Mother in Atlanta, as do Child's two sisters, J. and A. *Id*. at 35–36. Child testified that on November 15, 2013, when J. was running away from Father to escape being hit by a belt, Father dragged J. down a flight of stairs by her leg and broke her arm. *Id*. at 36–37.

The trial court also questioned Child. Child told the court that Child lived in Michigan with her cousin, C.J., for one year, while Mother was incarcerated in Georgia. N.T., 8/13/14, at 37–38. Thereafter, she lived with Father and Stepmother for four years. *Id*. at 38–39. Moreover, Child lived with Mother in Georgia prior to living in Michigan, and had not been in Mother's care for the past five years. *Id*. at 39.

Mother testified that she has a place to live and would like Child to live with her in Atlanta. N.T., 8/13/14, at 41–42. Mother admitted that she had been in prison for eighteen months following a shoplifting conviction. *Id*. She confirmed Child's testimony that Children's Services was not involved when Child resided in Georgia. *Id*. at 43–44. Mother testified that she became aware of Child's mental health issues when Child was hospitalized at WPIC in June of 2014. *Id*. at 44–45. At that time, Mother discovered that Child had been hospitalized for mental issues in 2012. *Id*. When Mother took Child and her younger siblings to live in Michigan, Father was precluded from contact with the children due to prior child cruelty charges against him

in Georgia. *Id*. at 46–47. Mother described a prior termination of parental rights proceeding concerning Child in Pennsylvania, wherein the orphans' court refused to terminate her parental rights but instead, instructed her to establish stability in her life in order to seek custody. *Id*. at 47. The orphans' court allegedly permitted Mother's visitation with her three daughters to be controlled by Stepmother, who thereafter forbade Mother to have any contact with the children. *Id*.

Mother stated that Stepmother's son and daughter told Mother about conditions in the home and told her that they hated being there. N.T., 8/13/14, at 47–48. Child also revealed to Mother that when Child proceeded to the police station one night, Father ran after her and took CYF's telephone number away from her. *Id*. at 49. Child reported to Mother that Stepmother and Father had thrown olive oil at her during an altercation on the night before the adjudicatory hearing. *Id*.

Mother testified that she had custody of Child for the first ten years of Child's life. N.T., 8/13/14, at 49–50. Mother explained that when Father had beaten her in front of Child and her two siblings, she had obtained a temporary restraining order against him that included three counts of child cruelty. *Id*. at 51–52. Mother stated that the temporary restraining order was for a five-year period between August of 2006 and 2011. *Id*. at 52. Mother testified that because Father was precluded from contact with the

three children, Stepmother misrepresented that Father did not live in the home. *Id*. at 52–53.

In her related issues on appeal, Child contends that the trial court relied on an incorrect standard of review regarding a finding of dependency. Child asserts that while the trial court was to consider whether there was clear and convincing evidence that she was without proper parental care and control, instead, the trial court improperly disregarded all of the credible and clear testimonial evidence. Child's Brief at 20. Child argues that the trial court could make a dependency determination based on the testimonial evidence without evidence of actual physical injury, and without a ChildLine or criminal investigation. *Id*. at 21 (citing *In Interest of R.T.*, 592 A.2d 55, 57 (Pa. Super. 1991)). Accordingly, Child urges that the trial court committed an error of law in misapplying 42 Pa.C.S. § 6302(1).

Child also avers that the trial court exercised manifestly unreasonable judgment in ignoring the valid and uncontroverted testimony that Child was suffering from maltreatment in the home of Stepmother and Father. Child's Brief at 27–28. She contends that the trial court's failure to adjudicate her dependent was an abuse of discretion. *Id*. at 28. Similarly, CYF argues that Child was without proper care and control, and should have been adjudicated a dependent child. CYF's Brief at 8 (citing *In re J.C.*, 5 A.3d 284 (Pa. Super. 2010)).

In response, Stepmother maintains that the trial court is charged with determining the credibility of the witnesses, and its decision was neither a misapplication of law nor manifestly unreasonable. Stepmother's Brief at 11. Father did not file a brief.

The Pennsylvania Supreme Court recently set forth our standard of review in a dependency case as follows:

> [T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. . . . We review for abuse of discretion[.]

*In Interest of L.Z.*, 111 A.3d 1164, 1174 (Pa. 2015), (citing *In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010)).

Section 6302 of the Juvenile Act defines a "dependent child," *inter alia*, as:

> **"Dependent Child."** A child who:
>
> 1) is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk[.]

42 Pa.C.S. § 6302.

With regard to a dependent child, this Court has explained:

> [A] court is empowered by 42 Pa.C.S. § 6341(a) and (c) to make a finding that a child is dependent if the child meets the statutory definition by clear and convincing evidence. If the

court finds that the child is dependent, then the court may make an appropriate disposition of the child to protect the child's physical, mental and moral welfare, including allowing the child to remain with the parents subject to supervision, transferring temporary legal custody to a relative or public agency, or transferring custody to the juvenile court of another state. 42 Pa.C.S. § 6351(a).

*In re D.A.*, 801 A.2d 614, 617 (Pa. Super. 2002) (*en banc*). "Clear and convincing" evidence has been defined as testimony that is "so clear, direct, weighty, and convincing as to enable the trier of facts to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *In re A.B.*, 63 A.3d 345, 349 (Pa. Super. 2013); *In re J.C.*, 5 A.3d at 288.

"The question of whether a child is lacking proper parental care or control so as to be a dependent child encompasses two discrete questions: whether the child presently is without proper parental care and control, and if so, whether such care and control are immediately available." *In re G., T.*, 845 A.2d 870, 872 (Pa. Super. 2004) (internal quotations and citations omitted). *See also In re J.C.*, 5 A.3d at 289 (citations omitted). Moreover, the burden of proof "is on the petitioner to demonstrate by clear and convincing evidence that a child meets that statutory definition of dependency." *In re G., T.*, 845 A.2d at 872.

This Court has defined "proper parental care" as "that care which (1) is geared to the particularized needs of the child and (2) at a minimum, is likely to prevent serious injury to the child." *In re A.B.*, 63 A.3d at 349 (quoting *In re C.R.S.*, 696 A.2d 840, 845 (Pa. Super. 1997)).

We have also described the considerations regarding when a child should be removed from parental custody, as follows:

> The law is clear that a child should be removed from her parent's custody and placed in the custody of a state agency only upon a showing that removal is clearly necessary for the child's well-being.  In addition, this court had held that clear necessity for removal is not shown until the hearing court determines that alternative services that would enable the child to remain with her family are unfeasible.

> *In re K.B.*, 276 Pa.Super. 419 A.2d 508, 515 (Pa. Super. 1980) (citations omitted).  In addition, this Court has stated: "It is not for this Court, but for the trial court as fact finder, to determine whether a child's removal from her family was clearly necessary."  *In re S.S.*, 438 Pa.Super. 62, 651 A.2d 174, 177 (1994).

*In re A.B.*, 63 A.3d at 349–350.

Initially, we address Child's argument that the trial court incorrectly stated the burden of proof for finding a child dependent under 42 Pa.C.S. § 6302(1).  The trial court described the burden of proof as including the following:

> In a dependency hearing, the burden of proof rests upon the petitioner, who must prove by clear and convincing evidence that proper care and control are not available, **and the best interests of the child will be served outside of parental custody**.  *In re T.M.*, 689 A.2d 954 (Pa. Super. 1997).

Trial Court Opinion, 12/10/14, at 4 (emphasis added).

The trial court appears to have grafted an additional requirement, that "the best interests of the child will be served outside of parental custody," to the petitioner's burden of proof that is **not** supported by *Interest of T.M*.

- 13 -

In fact, this Court stated in that case that a "finding of dependence is not the same thing as a determination of what is in the best interests of the child; courts are limited by the restrictive definitions contained in the [Juvenile] Act in determining when a child is dependent." **Interest of T.M.**, 689 A.2d at 955; **see also In Interest of Pernishek**, 408 A.2d 872, 878 (Pa. Super. 1979) (stating that, in determining whether a child is dependent, the hearing judge should not ask what are the child's "best interests" but whether the child is presently without proper parental care and, if so, whether such care is immediately available). Thus, to the extent that the trial court intertwined a best-interest test with the statutory standard for 42 Pa.C.S. § 6302(1), we find that the trial court erred as a matter of law.

Next, we turn to Child's argument that the testimonial evidence established that she indeed was a "dependent child," as defined in 42 Pa.C.S. § 6302(1). The trial court provided the following analysis in its opinion:

> [Child] argues that this "trial court erred as a matter of law and/or abused its discretion in disregarding competent and unrebutted clear and convincing evidence supporting the dependency adjudication of [Child] under 42 Pa.C.S.A. 6302(1)." *Concise Statement of Matters Complained of on Appeal*, section 1. We disagree. This [c]ourt was not presented with any tangible evidence of abuse of [Child] by Stepmother and Father. Alternatively, this [c]ourt relied on clear and convincing testimony from CYF workers that there were no signs of abuse via CYF records, hospital records and/or school records. Despite regular visits to [Child's] home and an investigation into [Child's] allegations, the CYF workers testified that they did not personally witness any abuse of [Child] or see signs thereof, nor did [Child] share with them that she was being abused. In the

- 14 -

alternative[,] Ms. Lewis testified that [Child's] home was cooperative and pleasant[,] while Mr. Sprague testified that Stepmother and Father did not pose a safety risk.

While [Child] testified as to physical punishment at the hands of her Stepmother and Father, this [c]ourt did not find that it rose to the level of abuse. This [c]ourt derived from the testimony presented that [Child's] account of abuse was wavering and uncorroborated by any physical or reliable testimonial evidence. It was established through the testimony of Mr. Sprague, [and] Ms. Lewis that [Child] had ongoing mental issues, which she was being treated for. This [c]ourt considered the testimony provided regarding Stepmother and Father's irregular participation in the in-home services, and while not ideal, that does not rise to the level of being unable to provide adequate care for [Child].

The evidence presented did not warrant an adjudication of dependency. . . .

Trial Court Opinion, 12/10/14, at 5.

Child argues that the trial court inappropriately mixed the evidence necessary for a determination of child abuse under section 6303 of the CPSL with the evidence necessary for finding that a child lacked proper parental care under section 6302(1) of the Juvenile Act. Child's Brief at 24. Relying upon **Interest of R.T.**, 592 A.2d at 57, Child contends that there was sufficient clear and convincing evidence in this matter for the trial court to conclude that she is a dependent child, based on testimony of the witnesses and without the need for evidence of physical injuries. Child's Brief at 21, 24. Child further asserts that the testimonial evidence showed that she was without proper parental care necessary to her physical, mental, and

emotional health, and that she was without proper parental care to ensure that future physical harm would not occur. Child's Brief at 25.

In *Interest of R.T.*, this Court explained that the CPSL[4] is a complement to the Juvenile Act. *Id.*, 592 A.2d at 58. The purpose of the CPSL is "to facilitate the protection of abused children, and to preserve and stabilize the family life of abused children." *Id.* Another purpose of the CPSL is:

> to ensure that each county children and youth agency establish a program of protective services with procedures to assess risk of harm to a child and with the capabilities to respond adequately to meet the needs of the family and child who may be at risk and to prioritize the response and services to children most at risk.

23 Pa.C.S. § 6302(b).[5]

This Court, in *Interest of R.T.*, explained the following:

> Even though the Juvenile Act and the CPSL are complementary in nature, neither of the acts provide[s] for an independent action of "abuse." In fact, "we have held that the CPSL does not create or include a separate action for child abuse, and, under the Juvenile Act, a finding of abuse can only be made as a part

---

[4] The CPSL, formerly set forth at 11 P.S. § 2201–2224, was repealed in 1990, and reenacted as Part VII of the Domestic Relations Code, 23 Pa.C.S. § 6301-6384. *See Interest of R.T.*, 592 A.2d at 58 n.2 (explaining that its holding was unaffected by the repeal and reenactment of the CPSL).

[5] Section 6302(b), setting forth the purpose of the CPSL, was not amended in 2014. The section identifying the definition of child abuse, section 6303(b), and the subsections defining terms relevant to child abuse in section 6303(a), were twice amended in 2014. As we are focusing on the trial court's ruling with regard to section 6302(1) of the Juvenile Act, the amendments to the CPSL are not relevant to the issues on appeal.

of [a] dependency proceeding in which abuse is alleged." In *In the Interest of M.B.*, [514 A.2d 599, 601 (1986)], we stated:

> [T]he issues before the Court in an abuse and dependency proceeding are distinct. The proof and argument on one would not necessarily match the proof and argument for the other. In an abuse case, the evidence revolves around the alleged incident of abuse, and the decision which must be reached is whether that evidence meets the standard defined in the Child Protective Services Law.
>
> On the other hand, a dependency proceeding focuses on whether the child at the time of the proceeding is without proper parental care or control . . . .

Therefore, even though "abuse is alleged as part of a dependency proceeding, and a court's finding of 'abuse' as defined by the CPSL would be sufficient evidence under most circumstances to support an adjudication of dependency," it is not determinative in adjudicating a child dependent. The evidentiary burden for a finding of abuse is less stringent under the CPSL due to the need for immediate intervention for protection of the child. However, as discussed above, under the Juvenile Act[,] the court in a dependency hearing must make a further determination by clear and convincing evidence that the abused child is presently without proper care and control necessary for physical, mental, or emotional health or morals. 11 P.S. § 2222 [now 23 Pa.C.S. § 6381]; *In the Interest of R.M.R.*, [530 A.2d 1381 (Pa. Super. 1987)]; 42 Pa.C.S. § 6302(1).

*Interest of R.T.*, 592 A.2d at 59 (some citations omitted).[6]

---

[6] Recently, in *Interest of L.Z.*, our Supreme Court reviewed the interrelationship between a dependency action under the Juvenile Act, 42 Pa.C.S. §§ 6301-6375, and a finding of child abuse as defined under section 6303 of the CPSL, 23 Pa.C.S. 6303. The Supreme Court's main focus therein was the evidentiary presumption for the identity of the abuser set forth in section 6381(d) of the CPSL, 23 Pa.C.S. § 6381(d).

We agree with Child that the trial court improperly based its finding that CYF had not proven that Child was dependent under the Juvenile Act on whether CYF had shown, with "tangible evidence," that Child suffered child abuse under the CPSL. The trial court erred as a matter of law in determining that Child is not dependent because of insufficient evidence of child abuse. *See In Interest of R.T.*, 592 A.2d at 58.

There was an abundance of clear and convincing evidence before the trial court, through the testimony of Mr. Sprague and Ms. Lewis, that Child had reported to WPIC that she feared returning to the home of Stepmother, where she received ongoing physical abuse by Stepmother and Father. After Father and Stepmother had an opportunity to speak with Child, however, Child decided to return home. When CYF investigated Child's allegations and put Crisis In-Home Services in place, Stepmother and Father refused to allow the service providers into the home or permit them to speak with Child outside of their presence. Child also withdrew and refused to discuss the matter with the service providers.

Moreover, at the dependency hearing, Child testified that she experienced ongoing physical abuse at the hands of both Stepmother and Father and was fearful that the abuse would continue after CYF no longer was involved with the family. Mother also testified that she did not have custody of Child, and that Stepmother, Child's legal custodian, had prevented Mother's contact with Child. However, Mother testified that

Stepmother's son and his girlfriend had contacted Mother about the physical discipline in the home of Stepmother and Father.

We conclude that the trial court's determinations in this matter are not supported by the competent evidence in the record. *Interest of L.Z.*; *Interest of R.T.*, 592 A.2d at 57 (stating that we will not overrule the trial court's findings if they are supported by competent evidence in the record). There was ample, clear, and convincing evidence that Child was not receiving care that was geared to her particularized needs, given her mental health issues. Nor was Child receiving care that at a minimum, likely would prevent serious injury to her, in light of the allegations of physical objects being thrown at her as well as physical beatings and the infliction of mental stress.[7]

Further, both Stepmother and Father refused the services that were mandated by the court in the shelter care order. CYF's Brief at 9. Father, through his counsel, declined to continue to provide care for Child in the home he shares with Stepmother, which cast Father as unavailable to provide immediate proper parental care for Child. *Id.* Thus, proper parental care and control was not immediately available for Child under an order for protective services in Stepmother's home.

_____

[7] The Juvenile Act defines "serious bodily injury" as "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ." 42 Pa.C.S. § 6302.

Additionally, although Mother indicated that she would like to have custody of Child in Atlanta, she did not present herself, at the time of the dependency hearing, as immediately prepared to resume legal and physical custody of Child, especially in view of Child's ongoing mental health issues. In fact, Mother testified that the orphans' court, in a termination of parental rights proceeding against her in Pennsylvania, had directed her to establish stability in her life.

As we have determined that there was clear and convincing evidence that Child was dependent, we find that the trial court abused its discretion in dismissing the petition without providing for a disposition. *See In re A.B.*, 63 A.3d at 349–350; *In re D.A.*, 801 A.2d at 617. The evidence showed that removal was necessary for Child's well-being. This is especially so given Mother's testimony that Father did not have custody of Child due to child cruelty charges filed against him in Georgia. The testimonial evidence clearly established that Stepmother, as Child's legal custodian, was permitting Father to live with Child.

Additionally, in the July 18, 2014 shelter care order, the court imposed protective supervision by CYF. Despite this order, Stepmother and Father prohibited service providers from entering their home, refused all communication, and prevented Child from speaking with the service providers outside of their presence. The testimonial evidence showed that the alternative to removal, permitting Child to remain in the home of

Stepmother and Father, with court supervision and the provision of services, would have been unfeasible. *See In re A.B.*, 63 A.3d at 349–350.

We conclude that the trial court failed to protect Child's physical, mental, and moral welfare by ordering Child to remain in the home under these intolerable conditions. Thus, we find that the order dismissing the dependency petition and ordering Child to remain in Stepmother's home was an abuse of discretion. *See In re D.A.*, 801 A.2d at 617; 42 Pa.C.S. § 6351(a).

Under the circumstances, the removal of Child from Stepmother's home is necessary to ensure an appropriate disposition of Child and to protect her physical, mental, and moral welfare. Accordingly, upon receipt of this Memorandum, we direct the trial court to immediately remove Child from the home and place her in the legal and physical custody of CYF, so that she may be placed in foster care. The trial court should re-visit these matters at the next permanency review hearing.

Order reversed. Case remanded for entry of an order consistent with this Memorandum. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/18/2015

- 21 -