J-S26045-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: S.P. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: W.R.F. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2052 MDA 2016 |

Appeal from the Order Entered November 30, 2016
In the Court of Common Pleas of Lancaster County
Juvenile Division at No(s): CP-36-DP-0000295-2016

BEFORE: BOWES, DUBOW, and FITZGERALD[*], JJ.

MEMORANDUM BY FITZGERALD, J.: **FILED MAY 15, 2017**

W.R.F. ("Guardian") appeals from the order of the trial court dated November 28, 2016, and entered on November 30, 2016, that (1) adjudicated S.P. ("Child") (born in October of 2002), the female child of S.D. ("Mother"), dependent pursuant to 42 Pa.C.S. § 6302, (2) removed Child from the home of Guardian, and (3) ordered Child placed in the temporary custody of the Lancaster County Children and Youth Social Service Agency ("CYS" or "Agency"), along with her siblings, B.K., J.B., and J.R., who had resided with Mother.[1] We affirm.

---

[*] Former Justice specially assigned to the Superior Court.

[1] L.P. ("Father") did not challenge the order by filing a separate appeal, nor did he file a brief in the instant appeal.

In its opinion entered on January 17, 2017, the trial court aptly summarized the relevant factual and procedural history of this matter, which we adopt as this Court's own. *See* Trial Ct. Op., 1/17/17, at 1-5. Importantly, Guardian resides in a non-winterized camper, in which she and her husband sleep on one side of a vinyl partition, and Child sleeps on a bunk bed where Guardian's teenaged son also sleeps. *Id.* at 2. Additionally, there were reports that Guardian's nine-year-old daughter also sleeps in the camper when she is not residing with her grandmother. *Id.* at 2-3. CYS had an open file regarding allegations that Guardian's nine-year-old daughter had been sexually abused while in contact with someone else when she was sleeping. *Id.* The open matter involving Guardian's family contained allegations concerning the appropriateness of the housing, and the lack of mental health treatment for the nine-year-old. *Id.* at 3. After Child was removed from Guardian's residence, she was placed in the Bethany Shelter with her brother, B.K. *Id.* at 7.

At the November 28, 2016 adjudicatory/dispositional hearing, the Agency presented the testimony of Kayla Teeples, an Agency caseworker assigned to the family. N.T., 11/28/16, at 7. Next, the Agency presented the testimony of A.W., the intake supervisor with the Agency who supervised the casework in this matter. *Id.* at 36. Thereafter, the guardian *ad litem* ("GAL") questioned Child in the trial court judge's chambers, and Guardian's counsel cross-examined the child. *Id.* at 43. Finally, the GAL questioned

B.K. in the trial court judge's chambers, and counsel for Mother and counsel for Guardian cross-examined B.K. *Id.* at 51. The trial court admitted Child's permanency plans into evidence as CYS Exhibit No. 1.

At the conclusion of the hearing, the trial court stated as follows:

> THE COURT: . . . Based on the testimony, I do find the children to be dependent children, and I will continue them in the legal and physical custody of the . . . Agency. The child permanency plans appear to be appropriate, so I approve all of the plans.
>
> In order for [Mother] to have contact with the children, she's going to be drug tested, and she has to be negative, and they have to be valid. That will be done prior to any visits.
>
> And concerning [Child], while I understand [Child] would like to be with [Guardian], I do not believe that the home meets the criteria that would be necessary as kinship placement. And I'm not indicating that I think she was inappropriate as far as trying to obtain the medical treatment and that type of thing. I just think that the whole process was completely lacking in that she did not have the necessary guardianship in order to consent to certain things. So I do believe that [Child] is also a dependent child.
>
> I'm also directing the Agency to find some other placement for both [B.K.] and [Child]. I just don't think that the Bethany Shelter is an appropriate place for them. Find a foster home, even if it's a respite home, for a period of time until you can do an assessment. Hopefully, all four children can be together because I think it's really necessary that they are together. . . .

N.T. at 59-60.

On November 28, 2016, the trial court adjudicated Child dependent and ordered that Child be placed in the legal and physical custody of the

Agency. In its disposition order, the court stated that it found Child to be without proper care or control, and that although reasonable efforts were made to prevent Child's removal from home, removal was in the best interests of Child. **See** Order, 11/28/16, at 1-2.

On December 15, 2016, Guardian timely filed a notice of appeal along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

On appeal, Guardian raises two questions for our review:

> I. Did the trial court err when it found that the [Agency], by clear and convincing evidence, had met its burden to demonstrate the [C]hild to be dependent as defined by the Juvenile Act at 42 Pa.C.S. Section 6302?
>
> II. Even if the [C]hild was properly adjudicated dependent, did the court properly determine that removal was a clear necessity in that alternative services that would enable the [C]hild to remain with Guardian were unfeasible?

Guardian's Brief at 7.[2]

We will address Guardian's issues together. With regard to her first issue, Guardian argues that there was no evidence that she was not meeting Child's basic needs. Guardian states that, although she was having difficulties with insurance, Child did not have a true medical emergency

---

[2] Guardian stated her issues somewhat differently in her concise statement. Nevertheless, we, find them preserved for our review. **See Krebs v. United Ref. Co. of Pa.**, 893 A.2d 776, 797 (Pa. Super. 2006) (holding that an appellant waives issues that are not raised in both his concise statement of errors complained of on appeal and the Statement of Questions Involved in her brief on appeal).

when Guardian took Child to the hospital for a sprained ankle. *Id.* at 12. Guardian contends that the drastic measure of placing legal and physical custody of Child with the Agency was not required. Guardian urges that the trial court erroneously applied a best interests standard, instead of a clear and convincing evidence standard, when it considered the housing available to Guardian and found Child to be dependent.

Regarding her second issue, Guardian contends that, even if the trial court properly found Child dependent, there was no clear necessity to remove Child from Guardian's home. Guardian claims that the trial court's main reason for finding Child dependent was her inability to obtain medical care for Child, since Mother had retained legal custody of Child. Guardian states that, had the court awarded legal custody to her, she would have been able to obtain medical treatment for Child. *Id.* at 10.

The Pennsylvania Supreme Court recently set forth our standard of review in a dependency case as follows.

> [T]he standard of review in dependency cases requires an appellate court to accept findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. We review for abuse of discretion[.]

*In Interest of L.Z.*, 111 A.3d 1164, 1174 (Pa. 2015) (citations and quotation marks omitted).

Section 6302 of the Juvenile Act defines a "dependent child" as:

[a] child who:

(1) is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk[.]

42 Pa.C.S. § 6302(1).

In *In re G., T.*, 845 A.2d 870 (Pa. Super. 2004), this Court clarified the definition of "dependent child."

The question of whether a child is lacking proper parental care or control so as to be a dependent child encompasses two discrete questions: whether the child presently is without proper parental care and control, and if so, whether such care and control are immediately available.

*Id.* at 872 (citations and quotation marks omitted); *see also In re J.C.*, 5 A.3d 284, 289 (Pa. Super. 2010). Additionally, we note that "[t]he burden of proof in a dependency proceeding is on the petitioner to demonstrate by clear and convincing evidence that a child meets that statutory definition of dependency." *G., T.*, 845 A.2d at 872 (citation omitted).

With regard to a dependent child, in *In re D.A.*, 801 A.2d 614 (Pa. Super. 2002) (*en banc*), this Court explained:

[A] court is empowered by 42 Pa.C.S. § 6341(a) and (c) to make a finding that a child is dependent if the child meets the statutory definition by clear and convincing evidence. If the court finds that the child is dependent, then the court may make an appropriate disposition of the child to protect the child's physical, mental and moral welfare, including allowing the child to remain with the parents subject to supervision, transferring temporary legal

custody to a relative or public agency, or transferring custody to the juvenile court of another state. 42 Pa.C.S. § 6351(a).

*Id.* at 617 (citation omitted).

Section 6351(e) of the Juvenile Act provides in pertinent part:

**(e) Permanency hearings.—**

(1) The court shall conduct a permanency hearing for the purpose of determining or reviewing the permanency plan of the child, the date by which the goal of permanency for the child might be achieved and whether placement continues to be best suited to the safety, protection and physical, mental and moral welfare of the child. In any permanency hearing held with respect to the child, the court shall consult with the child regarding the child's permanency plan, including the child's desired permanency goal, in a manner appropriate to the child's age and maturity.

42 Pa.C.S. § 6351(e)(1).

Section 6351 of the Juvenile Act further prescribes the pertinent inquiry for the reviewing court:

**(f) Matters to be determined at permanency hearing.—**At each permanency hearing, a court shall determine all of the following:

(1) The continuing necessity for and appropriateness of the placement.

(2) The appropriateness, feasibility and extent of compliance with the permanency plan developed for the child.

(3) The extent of progress made toward alleviating the circumstances which necessitated the original placement.

(4)   The appropriateness and feasibility of the current placement goal for the child.

(5)   The likely date by which the placement goal for the child might be achieved.

(5.1) Whether reasonable efforts were made to finalize the permanency plan in effect.

(6)   Whether the child is safe.

(7)   If the child has been placed outside the Commonwealth, whether the placement continues to be best suited to the safety, protection and physical, mental and moral welfare of the child.

*   *   *

(9)   If the child has been in placement for at least 15 of the last 22 months or the court has determined that aggravated circumstances exist and that reasonable efforts to prevent or eliminate the need to remove the child from the child's parent, guardian or custodian or to preserve and reunify the family need not be made or continue to be made, whether the county agency has filed or sought to join a petition to terminate parental rights and to identify, recruit, process and approve a qualified family to adopt the child unless:

  (i)  the child is being cared for by a relative best suited to the physical, mental and moral welfare of the child;

  (ii) the county agency has documented a compelling reason for determining that filing a petition to terminate parental rights would not serve the needs and welfare of the child; or

  (iii) the child's family has not been provided with necessary services to achieve the safe return to the child's parent, guardian or custodian within the time frames set forth in the permanency plan.

\* \* \*

**(f.1) Additional determination.—**Based upon the determinations made under subsection (f) and all relevant evidence presented at the hearing, the court shall determine one of the following:

(1)  If and when the child will be returned to the child's parent, guardian or custodian in cases where the return of the child is best suited to the safety, protection and physical, mental and moral welfare of the child.

(2)  If and when the child will be placed for adoption, and the county agency will file for termination of parental rights in cases where return to the child's parent, guardian or custodian is not best suited to the safety, protection and physical, mental and moral welfare of the child.

(3)  If and when the child will be placed with a legal custodian in cases where return to the child's parent, guardian or custodian or being placed for adoption is not best suited to the safety, protection and physical, mental and moral welfare of the child.

(4)  If and when the child will be placed with a fit and willing relative in cases where return to the child's parent, guardian or custodian, being placed for adoption or being placed with a legal custodian is not best suited to the safety, protection and physical, mental and moral welfare of the child.

\* \* \*

**(f.2) Evidence.—**Evidence of conduct by the parent that places the health, safety or welfare of the child at risk, including evidence of the use of alcohol or a controlled substance that places the health, safety or welfare of the child at risk, shall be presented to the court by the county agency or any other party at any disposition or permanency hearing whether or not the conduct was the basis for the determination of dependency.

> **(g) Court order.—On the basis of the determination made under subsection (f.1), the court shall order the continuation, modification or termination of placement or other disposition which is best suited to the safety, protection and physical, mental and moral welfare of the child.**

42 Pa.C.S. § 6351(f)-(g) (emphasis added). Thus, the Juvenile Act instructs the trial court to consider the disposition that is best suited to the safety, protection and physical, mental and moral welfare of the child.

Here, the trial court found Mother has a history of drug abuse and is unable to provide Child with proper parental care and control at present. **See** Trial Ct. Op. at 6-7. In fact, Mother concedes that the trial court properly found Child dependent. **See** Mother's Brief at 3. Moreover, the trial court properly found from the evidence that Father is not available to provide Child with proper parental care and control. **See** Trial Ct. Op. at 6-7. Additionally, the trial court found that Guardian is unable to provide the necessary care for Child, both because Guardian is not authorized to take over Child's medical needs and consent to necessary procedures, and because her housing is inappropriate for Child. **Id.** at 7-8. Accordingly, the trial court properly found from the evidence that Child is dependent, as Child is without proper parental care and control, and such care and control are

not immediately available from her parents or Guardian.[3]  **See In Interest of L.Z.**, 111 A.3d at 1174; **In re G., T.**, 845 A.2d at 872.

Next, with regard to the disposition of Child, Guardian argues that a temporary transfer of legal custody to her would have resolved the issue of medical consent.  Guardian's Brief at 19.  Further, Guardian suggests that the trial court could have included authorization for her to obtain evaluations and treatment for Child in its dispositional order.  **Id.** (citing Pa.R.J.C.P. 1515(A)(i)); **see also** Pa.R.J.C.P. 1512(D)(1)(j) (relating to authorizations for medical treatment in dispositional orders).[4]  She also suggests that the court could have imposed any other limitations on the sleeping arrangements in her camper-home, as the court identified Guardian's housing as a problem.

This Court has thoroughly reviewed the record in this matter.  We are satisfied that the trial court considered the disposition that is best suited to the safety, protection, and physical, mental and moral welfare of Child in

---

[3] Although Guardian relies on **In the Interest of T.M.**, 689 A.2d 954 (Pa. Super. 1996), that case is distinguishable from the instant matter.  In **T.M.**, the county agency appealed, alleging that the trial court abused its discretion in failing to find the subject child dependent.  **Id.** at 955.  This Court agreed with the trial court that, under the facts in that case, even if the parents needed to learn parenting skills for their infant, there was not sufficient clear and convincing evidence that the subject child lacked proper parental care or control necessary for her health or well-being.  **Id.** at 957.

[4] Rule 1512(D)(1)(j) was previously found at Rule 1515(D)(1)(i), which was amended on July 13, 2015, and became effective on October 1, 2015.

removing her from Guardian's camper-home, where Child shares a bunk bed with Guardian's teenaged son, and not reunifying Child with Mother at present.[5]  ***See In Interest of L.Z.***, 111 A.3d at 1174; ***In re D.A.***, 801 A.2d at 617.  Therefore, we find the disposition appropriate and affirm the order of the trial court on the basis of the court's well-reasoned opinion.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/15/2017

---

[5]  In fact, Mother agrees with Child's removal from Guardian's camper-home. ***See*** Mother's Brief at 3.